# EXHIBIT 1

Clerk of the Superior Court
*** Electronically Filed ***
J. Nelson, Deputy
2/12/2021 1:40:20 PM
Filing ID 12540670

1

2

3

4

5

6

John A. Elardo, Esq., #015043
Philip A. Moncla, Esq., #035561
**ELARDO, BRAGG, ROSSI**
**& PALUMBO, P.C.**
3001 East Camelback Road, Suite 130
Phoenix, Arizona 85016
(602) 889-0272 File No.: 21-033
Minute Entries: court@ebarlaw.com
e-mail: jelardo@ebarlaw.com
        pmoncla@ebarlaw.com
*Attorneys for Plaintiff*

7

8

9

<div align="center">

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

</div>

10

11

12

13

14

15

16

17

18

| | |
|---|---|
| RYDER TRUCK RENTAL, INC. | Case No.:  **CV2021-002401** |
| Plaintiff, | **COMPLAINT FOR DECLARATORY** |
| vs. | **JUDGMENT AND MONETARY** |
| | **JUDGMENT** |
| JACK HOOD TRANSPORTATION; INC.; LIBERTY INSURANCE CORPORATION; SHEILA THOMAS; JOHN AND JANE DOES I-X; BLACK AND WHITE CORPORATIONS I-X | |
| Defendants. | |

19

20

21

22

23

24

25

26

    PLAINTIFF, Ryder Truck Rental, Inc. ("Ryder"), as and for its causes of action
against defendants Liberty Insurance Corporation ("Liberty"), Jack Hood Transportation,
Inc. ("Jack Hood") and Sheila Thomas, hereby shows to the court as follows:

    1.    This is a complaint for declaratory relief under the Arizona Uniform
Declaratory Judgments Act (Ariz. Rev. Stat. Ann. § 12-1831 et seq) and for a monetary
judgment;

    2.    The subject matter of the contracts at issue is in Arizona;

3.      The bodily injury(ies) for which plaintiff seeks declaratory relief occurred in Arizona;

4.      Plaintiff Ryder Truck Rental, Inc. is a Florida Corporation that does business in Arizona;

5.      Defendant Jack Hood is an Indiana Corporation that does business in Arizona;

6.      Defendant Liberty is an Illinois Insurance Company that does business in Arizona;

7.      Defendant Sheila Thomas resides in Arizona;

8.      Jurisdiction and venue are appropriate in this court;

9.      On or about August 11, 2018, Sheila Thomas sustained injuries when a "lift-gate" attached to a cargo truck came down on her foot (hereinafter the "incident");

10.     At the time of the incident Ms. Thomas was an employee/agent of defendant Jack Hood;

11.     Jack Hood had rented the truck (Ryder unit no 641087) from Ryder's Phoenix Arizona location on or about April 24, 2018.  A copy of the rental agreement is attached to this complaint as Exhibit "A";

12.     Jack Hood agreed, in the rental contract, to maintain liability insurance "per the TLSA" (Truck Lease and Service Agreement);

13.     Jack Hood agreed, in the TLSA and Schedule A with Ryder, to maintain liability insurance, in a minimum amount of $2,000,000.00, naming Ryder as an additional insured under its liability policy(ies).  Copies of the TLSA and pertinent Schedule(s) are attached to this complaint as Exhibit "B";

14.     Paragraph 5.B. of the rental contract reads as follows:

Customer agrees that Ryder will have absolutely no liability whatsoever, and agrees to release, indemnify, and hold Ryder harmless for any and all . . . claims, damages,

or losses arising from injuries of any nature whatsoever, or death of Customer, Customer's agents, employees, guests, family, members of Customer's family, or other occupants of the Vehicle EVEN WHEN SUCH DEATH OR INJURY WAS DUE TO RYDER'S FAULT OR NEGLIGENCE, and Customer assumes all such risk and liability.

15.     On or about August 19, 2019, Ms. Thomas filed a bodily injury lawsuit against "Ryder Truck Rental" in the Maricopa County (Arizona) Superior Court under Cause Number CV-2019-095533 (hereinafter the "underlying suit").  A copy of the underlying suit complaint is attached hereto as Exhibit "C";

16.     The underlying suit alleges Ryder is liable for Ms. Thomas' injuries due to "negligent maintenance" of the truck and liftgate attached thereto;

17.     At the time of the incident Jack Hood was a named insured under a policy of liability insurance issued by Liberty, Policy Number AS7-Z91-466370-017.  Copies of the pertinent policy forms are attached hereto as Exhibit "D";

18.     An ACORD Certificate of Liability Insurance was issued by Anderson Industries to Ryder certifying that Ryder was an additional insured stating: "Newspaper of Magazine Distributors***Reg Auto-Ryder Truck Rental Inc. is Lessor-Additional Insured (CA2048) & Loss Payee as req by written contract for all vehicles leased, rented or supplied as a substitute to the named insured."  A copy of the pertinent Certificate of Liability Insurance is attached hereto as Exhibit "E";

19.     The listed named insured on Liberty policy AS7-Z91-466370-017 is Jack Hood Transportation Inc.;

20.     The liability limits on Liberty policy AS7-Z91-466370-017 are $2,000,000.00;

21.     Section II(B)(2) of policy AS7-Z91-466370-017 provides coverage for "bodily injury" or "property damages" assumed in a contract or agreement that is an "insured contract";

22. Liberty policy AS7-Z91-466370-017 covers "any autos:'

23. Liberty policy AS7-Z91-466370-017 requires Liberty to pay all sums an "insured" legally must pay as damages because of bodily injury or property damage to which the insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto;

24. Ryder is an "insured" for the underlying suit claims under Liberty policy AS7-Z91-466370-017 as it is an additional insured;

25. The underlying suit claims allege "bodily injury" caused by an "accident" resulting from the ownership, maintenance or use of a covered auto;

26. On or about November 4, 2019, Ryder tendered the underlying suit claims to Liberty for defense and coverage/indemnity;

27. On or about September 24, 2020 Ryder re-tendered the underlying suit claims to Liberty for defense and coverage/indemnity;

28. Jack Hood contractually agreed to indemnify Ryder for bodily injury claims by Jack Hood employees, even if such claims are based upon allegations of Ryder's own negligence;

39. The underlying suit claims trigger the indemnity clause in favor of Ryder as an indemnitee, because Ms. Thomas is an employee/agent of Jack Hood, her claims are for bodily injuries, and the allegations against Ryder include "negligence" claims;

30. On or about September 23, 2020, Ryder tendered the underlying suit to Jack Hood for defense and indemnity;

31. The suit claims against Ryder are covered under Liberty policy AS7-Z91-466370-017 as Ryder is an additional insured under the "insured contract";

32. To date, both Jack Hood and Liberty have refused to defend Ryder in the underlying suit and to acknowledge Ryder's liability coverage/indemnity under the contracts and insurance policy;

33.     Declaratory relief is available and appropriate as this is a real/ripe dispute between these parties;

WHEREFORE, Ryder seeks the following relief in this matter:

For an order declaring that Liberty is, and was, required to defend Ryder in the underlying suit from the date of first tender until conclusion;

For an order declaring that Liberty is required to indemnify/cover Ryder for any amounts that Ryder may be liable for in the underlying suit;

For an order declaring that Jack Hood is, and was, required to defend Ryder in the underlying suit from the date of first tender until conclusion;

For an order declaring that Jack Hood is required to indemnify/cover Ryder for any amounts that Ryder may be liable for in the underlying suit;

For an order of judgment against defendants Liberty and/or Jack Hood for any and all amounts Ryder has spent in its own defense of the underlying suit; in an amount to be determined at the time of trial;

For all allowed costs of suit and reasonable attorney's fees expended by plaintiff to establish coverage as requested in the complaint; and

For any other relief that the court may deem just and equitable under the circumstances.

Dated this 12ᵗʰ day of February, 2021.

By/s/Philip A. Moncla
John A. Elardo, Esq.
Philip A. Moncla, Esq.
**ELARDO, BRAGG, ROSSI
& PALUMBO, P.C.**
3001 East Camelback Road, Suite 130
Phoenix, Arizona 85016
*Attorneys for Plaintiff*

**Original** e-filed with the court;
**Copy** electronically delivered to:

**MARICOPA COUNTY SUPERIOR COURT**
201 West Jefferson
Phoenix, Arizona 85003

**Copy** mailed this 12th day
Of February 2021, to:

Lindsay Bautista
**BAUTISTA LAW GROUP, PLLC**
565 West Chandler Boulevard, Suite 215
Chandler, Arizona 85225
lindsay@bautistalawgroup.com
*Attorney for Defendant Sheila Thomas*

Aaron T. Martin (No. 028358)
**Martin Law & Mediation PLLC**
PO Box 45023
Phoenix, AZ 85064
aaron@martinlawandmediation.com
*Co-Counsel for Defendant Sheila Thomas*

/s/Brandy Goodner

6

# EXHIBIT A

 **Ryder**

**CUSTOMER REFERENCE NUMBER:** 0764500441245
**RENTAL AGREEMENT NUMBER** : 1840916   **CLIENT ACCOUNT NUMBER:** 10760

| Rental Location/Contact Information | Hours of Operation and additional information |
|---|---|
| **Ryder Truck Rental, Inc.** | **Mon ~ Fri :** 7:00 AM-5:00 PM |
| 2301 N. BLACK CANYON HWY | **Saturday :** 8:00 AM-12:00 PM |
| PHOENIX, ARIZONA, 850091821 | **Sunday :** Closed |
| **Phone Number:** 6022548456 | **24/7 Roadside Assistance:** 866-477-0438 |
| **Sales Rep** : Robert Shedd | **Customer Service** : 1-800-947-9337 |
| **Area Manager** : Rosemary Youngstrom | |
| Rosemary_Youngstrom@ryder.c | |



```
************************************************        R E N T A L   AGREEMENT
**                                        **        ----------------------
**                         WITH FUEL    FUEL 14 **   ACTIVITY DATE : 04/23/18
**                                        **        CUST REF #: 0764500441245
**                                        **        VEHICLE NO:      641087
************************************************
CUSTOMER  INFORMATION      DRIVER  INFORMATION      DATE/TIME/MILEAGE INFO:
---------------------      -------------------      ----------------------
JACK HOOD TRANSPORTATION, INC.                      DUE: 07/24/18      07:00
10827 W 400 N                                       OUT: 04/24/18      07:00
MICHIGAN CITY, IN
                46360-9474                          ODOM OUT:   0 7 8 0 6 4
219-874-7086
CONTACT: ACCOUNTS PAYABLE
Ord By: SCOTT
*****************************************************************************
VEHICLE DESCRIPTION:       RATES AND CHARGES:    *** WITH FUEL ***     TOTAL AMT
-------------------        -----------------     -----------------     ---------
26' Diesel Light Duty Van  Daily Rental          @ $   53.19/D =$
FRTL M2 106                Monthly Rental         @ $ 1618.00/M =$
License #: CJ08278         Mileage Rate           @ $  0.0800/M =$
State: AZ                     Sub-Total Rental              =$
** Special Rate: No Other Discounts Apply **   TOTAL RENTAL CHARGES  =$      0.00
```

• LIABILITY PROTECTION - Customer agrees to provide Liability Protection with limits set forth in TLRA between Customer and Ryder. (READ TLRA, S.C.)

• This Lessor cooperates with all federal, state, and local law enforcement officials nationwide to provide the identity of Customers who operate this rental Vehicle.

• The Vehicle shall not be operated by anyone other than the Customer, the Customer's employees, or Customer's employer. All drivers must be safety checked by Ryder before operating the Vehicle. If Customer changes drivers during rental period, the Customer must arrange for Ryder to safety check the new driver before the new driver is permitted to operate the Vehicle. The Vehicle shall be used by the Customer only in the normal course of its business, and Customer or driver of the Vehicle shall in no event be or be deemed the agent, servant or employee of Ryder in any manner or for any purpose whatsoever.

• Customer is totally responsible for all loss or damage to the Vehicle. (Read Para. 8 & 9)

• I have read, understand and hereby agree to the terms and conditions on both side of this Agreement, and I agree to pay the charges for the options I have selected.

| Customer Signature | Truck rental and safe instructions provided by Ryder agent |
|---|---|

**Cargo Contents** : CARGO MISC   Corrections# : 00
**Manual Reference Number** : 0
**USDOT Number** :   Intrastate - No Hazardous Material

Additional Terms and Conditions on Other Side – Please Read Carefully
*Thank you for doing business with Ryder!*

Y70160ABA.91

## Additional Terms and Conditions of Rental Agreement ("Agreement")

Ryder Truck Rental, Inc. d/b/a Ryder Transportation Services ("Ryder") hereby rents to the customer executing this Agreement ("Customer") the truck and other rental property and accessories listed on the other side of this Agreement (collectively the "Vehicle"). If the terms on the other side of this Agreement conflict with the terms set forth below, those contained on the other side shall govern (only to the extent of such conflict). A COPY OF THIS AGREEMENT MUST BE CARRIED IN THE VEHICLE AT ALL TIMES DURING THE RENTAL.

Ryder may use its customer data for mailings by Ryder, its business partners, and other parties. In addition, Ryder may rent, sell, or exchange such data for marketing purposes. If you do not wish to receive such mailings or solicitations, please write to: Ryder, P.O. Box 020816, Miami, Florida 33102-0816.

1. VEHICLE CONDITION: Customer acknowledges that it has inspected the Vehicle and that any visible damage or defect has been noted on the Vehicle Damage Description and Safe Driving Tips form or any other supplemental Ryder form attached (which are incorporated by reference into this Agreement). It is the sole responsibility of Customer to ensure that the condition of the vehicle is acceptable to customer for its intended use and that use of the vehicle will not result in any violation of any laws, regulations, or ordinances applicable to such use. RYDER MAKES NO EXPRESS OR IMPLIED WARRANTY OR GUARANTY AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE CONDITION OF THE VEHICLE, OR THE VEHICLE'S MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE. RYDER SHALL NOT BE LIABLE TO CUSTOMER OR ANY THIRD PARTY FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES FOR ANY REASON WHATSOEVER.

2. PROHIBITED USE OF VEHICLE: Customer will NOT use or permit the Vehicle to be used: (i) In violation of any Federal, state, or local law, ordinance, or regulation; (ii) to push or tow anything with a gross weight (empty weight of towing device plus weight of load on towing device) in excess of the maximum towable weight shown on the Ryder Vehicle; (iii) or driven by anyone other than (a) the driver listed on the other side, and/or (b) his/her regular fellow employees, employer, or business partner on a business rental unless Customer elects at the start of the rental, and pays for (where applicable), the Additional Drivers Option, in which event any properly licensed and qualified driver may drive the Vehicle (ALL DRIVERS MUST BE PROPERLY LICENSED AND QUALIFIED, 18 YEARS OF AGE OR OLDER, AND HAVE CUSTOMER'S PRIOR EXPLICIT WRITTEN OR VERBAL PERMISSION TO DRIVE THE VEHICLE); (iv) off an improved road or other paved surface, in a reckless or abusive manner, in excess of applicable speed limits, or while the driver is under the influence of alcohol or a controlled substance; (v) to transport any car, truck, animal, or human being inside the cargo section of the Vehicle; (vi) to transport any passengers or animals in the cabin, except as required in the normal and ordinary course of business; (vii) to transport persons for hire or for the illegal transportation of any intoxicating liquor, cigarettes, a controlled substance, or other contraband; (viii) to haul any load that would make the Vehicle exceed the gross vehicle weight (empty weight of the Vehicle plus the weight of load) shown on the Ryder Vehicle or on the other side of this Agreement, nor with any load improperly packed or secured; (ix) in any area of strike, labor or civil disruption or violence, or natural disaster; (x) in or taken into Mexico or anywhere else outside of the United States ("U.S.") or Canada; and/or (xi) TO STORE, TREAT, TRANSPORT, OR DISPOSE OF ANY REGULATED, TOXIC, OR HAZARDOUS SUBSTANCE OR WASTE (INCLUDING, WITHOUT LIMITATION, CORROSIVE, INFECTIOUS, POISONOUS, FLAMMABLE, EXPLOSIVE, OR RADIOACTIVE SUBSTANCES AND MEDICAL WASTE) AS DEFINED IN ANY LAW. Customer acknowledges and represents that it (including any employees and third-party agents who interact with Ryder under this Agreement on Customer's behalf) has been, is and shall remain in compliance with U.S. export controls and sanctions laws and regulations and all designations made under these laws and regulations. To the extent that Customer is subject to an enforcement action or designation under any such export controls or sanctions law, Customer will notify Ryder within ten business days following the date of the government's notice to the Customer of such action.

3. CHARGES: Customer will pay all charges due Ryder on demand in U.S. currency or by Ryder accepted credit card or other form of payment acceptable to Ryder. Any Customer deposit will be applied to, and guarantee, Customer's complete performance of its obligations under this Agreement. Ryder may charge any amounts due Ryder against any credit card used in connection with the rental. Customer will be charged a fee for any check used for payment of charges that is returned to Ryder unpaid for any reason whatsoever. Customer will pay the full charge for each full or partial rental day. The Daily Rental Rate or Flat Rate, if any, set forth on the other side of this Agreement is the minimum charge and may be charged for a rental period of less than 24 hours. If Customer requests an adjustment of services during the term (resulting in an account profile change or otherwise), Ryder may accept the request in writing, which shall notify Customer of any adjustment of charges.

4. LIEN ON CUSTOMER'S PROPERTY: Ryder will have a lien on all of the Customer's property transported in the Vehicle or any trailer attached to the Vehicle for all charges and expenses incurred, including those related to damage to the Vehicle. If Customer does not pay all charges when due, Ryder may, at its option, sell at public or private sale, without further notice to Customer, all such property to satisfy these charges and all costs associated with this sale consistent with applicable law.

5. LIABILITY PROTECTION

A. RYDER LIABILITY PROTECTION: Unless (i) Customer declines liability protection or (ii) Customer elects higher limits of liability as indicated on the other side and the other side of this Agreement is so endorsed, the Vehicle is covered by an automobile liability insurance policy, Old Republic Insurance Company Policy No. TB15273 or any successor or replacement policy therefor (Liability Protection Plan) which covers Customer against bodily injury and property damage claims by others, and such Liability Protection Plan is primary. Unless (i) Customer declines liability protection or (ii) Customer elects higher limits of liability protection as indicated on the other side and the other side of this Agreement is so endorsed, Old Republic Insurance Company Policy No. TB 15273 or any successor or replacement policy therefor is the only automobile liability coverage extended to the Customer under this Agreement and the limits of liability to be furnished to Customer pursuant to this agreement are as follows: (i) For any Vehicle other than a Tractor (as defined below), the split limits of liability are $10,000 for each person injured, subject to a limit of $20,000 from all injuries resulting from one accident, and a limit of $5,000 for damages to property resulting from any one accident, unless the limits required by an applicable compulsory or financial responsibility law of the state/province in which the accident occurs are higher in which case such higher limits may apply. For example, in California, Vehicle Code Section 16451 requires the split limits of liability are $15,000/$30,000, (ii) For a truck type tractor equipped with a fifth wheel (Tractor), the split limits of liability are $250,000 for each person injured, subject to the limit of $500,000 from all injuries resulting from any one accident, and a limit of $100,000 for damages to property resulting from one accident, unless the limits required by a compulsory or financial responsibility law of the state/province in which the accident occurs are higher, in which case such higher limits will apply. A copy of the Liability Protection Plan is available for inspection at Ryder's main offices. Customer agrees to comply with and be bound by all of the terms, conditions, limitations and restrictions of the Liability Protection Plan (even those that are not specifically mentioned in this Agreement), and such terms, conditions, limitations and restrictions are incorporated by reference into this Agreement. You agree to file any and all claims within the United States even if by virtue of your business operation such loss takes place outside the United States.

If, at the start of the rental, Customer elects higher limits of liability protection (where available), which provides higher limits of liability protection than those indicated in Paragraph 5A, above, and the other side of this Agreement is so endorsed, then those higher limits will be applicable and Customer agrees to pay the additional rate shown therefor. In such event, all coverage and limits of liability will be solely and entirely extended under a separate and different automobile liability insurance policy, Old Republic Insurance Company Policy No. Z35726 or any successor or replacement policy therefor.

If Customer elects a deductible amount per accident under the Liability Protection Plan or any other plan with higher limits, if elected, (OPTION AVAILABLE ONLY TO COMMERCIAL CUSTOMERS AND NOT AVAILABLE AT ALL RYDER LOCATIONS), and the other side of this Agreement is so endorsed, Customer will be responsible for such amount in the event of an accident. Customer agrees that Ryder and/or Ryder's insurance carriers, at their option, will have the sole right to conduct accident investigations and administer claims handling and settlements, and in such event Customer will adhere to and accept Ryder and /or Ryder's insurance carriers conclusions and decisions. Customer agrees to release, indemnify and hold Ryder and Ryder's insurance carriers harmless from and against any and all expense (including without limitation court costs, attorneys fees and expert witness fees), damages and/or liability arising out of the use or operation of the Vehicle (EVEN IF DUE TO RYDERS FAULT OR NEGLIGENCE) which are (i) in excess of the limits of liability described in Paragraph 5A, (ii) excluded from coverage under the Liability Protection Plan or any other liability plan with higher limits, if elected, and/or (iii) not otherwise covered under the Liability Protection Plan or other liability plan with higher limits, if elected.

The Liability Protection Plan or other liability plan with higher limits, if elected, does NOT apply: (i) If the Vehicle is obtained, used or operated in violation of any provision of this Agreement, (ii) to loss or damage to property, whether or not owned by Customer, in the Vehicle, or for any reason in Customer's care, custody or control, (iii) To any injuries of any nature whatsoever to Customer, Customer's agents, employees, guests, family members of Customer's household or other occupants of the Vehicle, (iv) To any tow dolly, car carrier or trailer if not rented from Ryder or if not attached to a Ryder Vehicle, and/or (v) for punitive, exemplary, incidental or consequential damages, fines or penalties.

Customer waives and is not provided with uninsured or underinsured motorist coverage, personal injury protection coverage, medical payment coverage, and/or supplementary no fault coverage. If any such coverage cannot be waived or excluded under the law of the state/province in which the accident occurs, or if such waiver or exclusion is otherwise unenforceable, such coverage will only be provided under the Liability Protection Plan or other liability plan with higher limits, if elected, to the extent and with the minimum limits required by the law of that state/province.

B. CUSTOMER LIABILITY INSURANCE: If Customer elects to provide liability insurance and this Agreement is so endorsed (OPTION AVAILABLE ONLY TO COMMERCIAL CUSTOMERS AND NOT AVAILABLE AT ALL RYDER LOCATIONS), Customer agrees to insure the Vehicle with a standard form automobile liability insurance policy, with Ryder named as an additional insured, covering all risks of loss or damage to persons or property, arising out of the ownership, maintenance, use, or operation of the Vehicle during the rental, regardless of fault. The limits of this insurance will not be less than $1,000,000 for all bodily injury and property damage arising from any one accident or such higher limits as Ryder may require. Customer agrees to provide Ryder with a certificate of insurance, evidencing the required coverage and limits of liability before using the Vehicle. Customer agrees to release, indemnify, and hold Ryder and Ryder's insurance carriers harmless from and against any and all expenses (including without limitation court costs, attorney fees, and expert witness fees), damages, and/or liability arising out of the ownership, maintenance, use, or operation of the Vehicle (EVEN IF DUE TO RYDER'S FAULT OR NEGLIGENCE) which are (i) in excess of the limits of liability under Customer's liability insurance, (ii) excluded from coverage under Customer's liability insurance, or (iii) not otherwise covered under Customer's liability insurance. If any applicable state/province law requires Ryder or its insurance carriers to extend liability insurance coverage, then notwithstanding Customer's election to provide such liability insurance, such coverage extended by Ryder or its insurance carrier will be limited to the statutory compulsory or financial responsibility minimum limits and will be excess over (i) that insurance Customer or Customer's insurance carriers has agreed to provide, and (ii) any other insurance coverage that any insurance carrier (other than Ryder's insurance carriers) furnishes. Customer acknowledges that the rental rate given to Customer is partly a function of Customer's provision of such insurance with complete coverage of and indemnification of Ryder. If Customer fails to procure or maintain liability insurance in accordance with this Paragraph 5B, then upon written notice, Ryder may immediately extend liability insurance (the Liability Protection Plan) in accordance with Paragraph 5A and charge Customer for such services.

C. TRUCK LEASE AND SERVICE AGREEMENT: If Customer is also a lessee pursuant to a Ryder Truck Lease and Service Agreement ("TLSA") and such TLSA designates Customer as the party responsible for providing and maintaining the liability insurance for the vehicle(s) leased thereunder, then that liability insurance will also extend to and cover the Vehicle(s) rented under this Agreement and the terms of the TLSA with respect to liability insurance will supersede and control over any contrary term in this Agreement. In all other respects the terms and conditions of this Agreement shall apply. Customer must furnish Ryder with proof of its liability insurance before Ryder will deliver the Vehicle to Customer.

6. THEFT AND DAMAGE TO VEHICLE: Unless Customer elects, at the start of the rental, Physical Damage Waiver ("PDW") or a Limited Damage Waiver ("LDW") on this Agreement, Customer is totally responsible for all loss (including theft) and/or damage, including road hazard damage, to the Vehicle, irrespective of any fault on the Customer's part. Ryder agrees to waive Customer's liability for theft of and/or physical damage to the Vehicle to the extent set forth on the other side of this Agreement if (i) Customer accepts and pays the charge for PDW or a LDW (where available), and (ii) CUSTOMER IS NOT IN VIOLATION OF ANY PROVISION OF THIS AGREEMENT. Notwithstanding the election of PDW or a LDW, Customer is totally responsible for all loss or damage to the Vehicle due to a violation of any provision of this Agreement. PDW AND LDW ARE NOT INSURANCE AND ARE OPTIONAL. If Customer does not elect, at the start of the rental, PDW or LDW, Customer shall furnish Ryder with evidence of Physical Damage insurance covering the Vehicle for loss or damage with Ryder endorsed as loss payee. Customer must immediately report any accident, loss, or theft of the Vehicle to the nearest Ryder District Office and will promptly (within 24 hours) complete a Ryder Accident Report form and provide Ryder with a detailed inventory of all cargo that was in the Vehicle. If Customer fails to procure or maintain Physical Damage insurance in accordance with this Paragraph, then upon written notice, Ryder may immediately extend PDW in accordance with this Paragraph and charge Customer for such services.

7. GLASS DAMAGE PROTECTION: Unless Customer elects at the start of the rental, Glass Damage Waiver ("GDW"), PDW, or LDW on this Agreement, Customer is totally responsible for all loss and/or damage to the windshield and windows of the Vehicle(s) (collectively referred to as the "Glass") irrespective of any fault on the Customer's part. Ryder agrees to waive Customer's liability for damage to the Glass to the extent set forth on this Agreement if (i) Customer accepts and pays the charge for the GDW, the PDW, or the LDW and (ii) CUSTOMER IS NOT IN VIOLATION OF THE AGREEMENT. Notwithstanding the election of GDW, PDW, or LDW, Customer is totally responsible for all loss and/or damage to the Glass due to a violation of any provision of this Agreement. GDW IS NOT INSURANCE AND IS OPTIONAL. Regardless of the selection by Customer related to GDW, any damage to windshield Glass (or any other Glass in the 2 States designated below) is covered, without deductible, in the cost paid for Ryder's extension of PDW or LDW in the following states (and only these states): Florida, Massachusetts, Kentucky (full glass), and South Carolina (full glass).

8. DAMAGE RESPONSIBILITY: When Customer is responsible for loss or damage to the Vehicle under this Agreement, including responsibility for a deductible under Paragraph 5 or 6, Customer will have the option of either (i) paying Ryder for the estimated costs of repairs for loss or damage plus an administrative mark-up ,or (ii) paying Ryder the actual repair costs, plus a reasonable administrative mark-up, plus the loss of use of the Vehicle until Vehicle is repaired and returned to service (such period not to exceed a commercially reasonable time or a maximum of 30 days), which shall be billed to Customer at the agreed upon rental rate. After receiving notice from Ryder regarding Customer's option as listed above, if Customer does not make an election within 7 days, option (i) will apply. Ryder will obtain a third party vendor estimate for any major damage. If Customer returns a Vehicle outside of normal business hours, Customer shall remain responsible for loss or damage to that Vehicle until the receiving Ryder location opens on the next business day and has a reasonable opportunity to inspect the Vehicle for damage. In the event of a theft of the Vehicle or a total loss, Customer shall pay Ryder the greater of: (a) the Vehicle's retail fair market value; or (b) Ryder's book value for the Vehicle.

9. PERSONAL ACCIDENT AND CARGO RESPONSIBILITY: Customer agrees that Ryder will have absolutely no liability whatsoever, and agrees to release, indemnify, and hold Ryder harmless for any and all (i) loss or damage to cargo or other property transported in the Vehicle, EVEN WHEN THE LOSS OR DAMAGE WAS DUE TO RYDER'S FAULT OR NEGLIGENCE and Customer assumes all such risk of loss or damage, and (ii) claims, damages, or losses arising from injuries of any nature whatsoever, or death of Customer, Customer's agents, employees, guests, family, members of Customer's family, or other occupants of the Vehicle EVEN WHEN SUCH DEATH OR INJURY WAS DUE TO RYDER'S FAULT OR NEGLIGENCE, and Customer assumes all such risk and liability.

10. RETURN OF THE VEHICLE BY CUSTOMER: Customer will return the Vehicle and all accessory items clean, dry, and free of odor, debris, pests, insects, contamination, or infestation, and in at least the same good condition as received, on the due date, and at the time specified on this Agreement, or upon Ryder's demand, to the location from which the Vehicle was delivered to Customer unless a different place of return is specified on this Agreement (the "Destination Location"). Unless the Agreement is terminated by Ryder, the term of this Agreement shall continue until Customer returns the Vehicle to Ryder in accordance with this Paragraph 10. In addition to all other charges due and remedies available to Ryder under this Agreement, CUSTOMER WILL BE LIABLE FOR A LATE CHARGE IF THE VEHICLE IS NOT RETURNED BY THE DUE DATE AND TIME SPECIFIED ON THE OTHER SIDE OF THIS AGREEMENT. A CLEANING SERVICE CHARGE MAY APPLY IF THE VEHICLE IS NOT RETURNED CLEAN. If no due date and time for returning the Vehicle are specified, Customer will return the Vehicle upon demand or within seven (7) days of the date that it was rented, whichever occurs first. If Customer does not return the Vehicle within three (3) days after the due date and time specified for its return or upon Ryder's demand, or if information provided to Ryder by Customer is false, Ryder may consider the Vehicle stolen and pursue all appropriate legal action, both criminal and civil, to recover the Vehicle. CUSTOMER AGREES NOT TO SUBLEASE OR RELET THE VEHICLE, WHICH CUSTOMER ACKNOWLEDGES IS OWNED BY RYDER, OR ASSIGN THIS AGREEMENT, AND ANY ATTEMPT TO DO ANY OF THE FOREGOING SHALL BE NULL AND VOID AND CONSTITUTE A MATERIAL BREACH OF THIS AGREEMENT. Neither Customer nor any driver of the Vehicle are, or shall in any event be or be deemed to be, the agent, representative, servant, or employee of Ryder in any manner or for any purpose whatsoever.

11. BREACH OF THIS AGREEMENT: In the event Customer breaches or is in default of any obligation in this Agreement, or if the Vehicle is overdue, illegally parked, or apparently abandoned, or if any information Customer provides to Ryder is false, Ryder may, without prior notice or demand to Customer, recover the Vehicle wherever it is located and immediately terminate this Agreement without prejudice to any of Ryder's rights or other remedies available under this Agreement or any law. Ryder will be entitled to recover from Customer all reasonable costs, expenses, and attorneys fees incurred by Ryder to repossess any Vehicle and/or enforce the terms of this Agreement.

12. MAINTENANCE RESPONSIBILITY AND INSPECTION RIGHTS: Customer shall conduct pre and post inspections of the Vehicle, complete required reports, and promptly notify Ryder of any Vehicle condition issues. Ryder will not be liable for any FMCSA violations or other citations for which Ryder was not provided notice.

Customer agrees to be responsible and pay for all mechanical damage to the Vehicle caused by: (i) Customer's breach of any provision of this Agreement; (ii) Customer's failure to maintain adequate oil, fluids, coolants, and water levels in the engine; and/or (iii) Customers neglect of any necessary servicing or maintenance of the Vehicle during the rental period. Customer will not perform, and Ryder will not be responsible for, any service, repairs, or other maintenance to the Vehicle during the rental period unless Ryder gives prior written authorization for such work. Ryder may inspect the Vehicle at any time wherever it is located.

The engine in the Vehicle is compliant with EPA Engine Emissions Standards and in accordance with the owner's manual may require Diesel Exhaust Fluid or a similar additive (DEF). All charges for DEF are Customer's responsibility and, if provided by Ryder, will be billed in addition to all other charges at Ryder's then-current rate. Failure to maintain required tank levels or adding non DEF fluids to this tank may cause Vehicle derate or system damage. Any failure to maintain required proper DEF fluid level is driver abuse and Customer is responsible for all mechanical damage resulting from such failure.

The Vehicle(s) contains technology that is compliant with 2007 or 2010 emissions standards. Customer acknowledges that Ryder has provided Customer with instructions concerning the periodic regeneration of the Diesel Particulate Filter (DPF) that must be performed in accordance with manufacturer's requirements. Instructions for DPF regeneration are also located on the backside of the driver's side sunvisor. It is Customer's sole responsibility to properly and timely perform the regeneration. Any failure to perform DPF regeneration is driver abuse and Customer is responsible for all costs necessary to repair and tow the Vehicle as well as any other mechanical damages resulting from such failure.

13. TAXES, FEES, PERMITS, TICKETS, AND FINES: Customer agrees to be responsible and pay for any taxes, special licenses, permits, fees, or tolls required by Customer's use and operation of the Vehicle and also agrees to file or assist Ryder in filing any and all returns or reports required, if any, by any agency or government body as a result of Customers use and operation of the Vehicle. In addition, Customer will promptly pay for all tickets, fines, and penalties, including forfeiture or seizure resulting from the use and operation of the Vehicle. IF CUSTOMER'S FAILURE TO PAY ANY TAXES, SPECIAL LICENSES, PERMITS, FEES, OR TOLLS RESULTS IN A CLAIM OR LIEN INVOLVING ANY VEHICLE, THEN RYDER MAY SETTLE THE CLAIM OR LIEN, AND CUSTOMER SHALL PROMPTLY PAY RYDER THE FULL AMOUNT OF SUCH SETTLEMENT, ANY COSTS, AND AN ADMINISTRATIVE CHARGE NOT TO EXCEED $10 PER OCCURRENCE FOR TOLLS ADMINISTERED THROUGH RENT A TOLL AND $25 PER OCCURRENCE FOR ALL OTHER TAXES, SPECIAL LICENSES, PERMITS, FEES, OR TOLLS. RYDER COOPERATES WITH ALL FEDERAL, STATE, AND LOCAL LAW ENFORCEMENT OFFICIALS NATIONWIDE TO PROVIDE THE IDENTITY OF CUSTOMERS WHO OPERATE THIS VEHICLE.

14. FUEL: RENTAL RATES DO NOT INCLUDE THE COST OF FUEL. THE VEHICLE WILL HAVE A FULL FUEL TANK UPON COMMENCEMENT OF THE RENTAL. CUSTOMER IS RESPONSIBLE FOR ALL FUEL DURING THE COURSE OF THE RENTAL. All fuel used in the Vehicle shall be of a type and grade that meets all manufacturers' recommendations and the requirements of applicable law. Customer must return the Vehicle with a full fuel tank if the Destination Location does not provide fuel or offer optional refueling service. If the Destination Location provides fuel, Customer may fill up the fuel tank at Customer's expense at the Destination Location or at any fuel retailer of Customer's choice. If the Destination Location offers optional refueling service and Customer elects not to refill the fuel tank prior to return, Customer will pay a refueling service charge (a) calculated by multiplying the rate per gallon by the number of gallons required to refill the fuel tank determined either by actual refueling or by reading the factory installed fuel gauge, and/or (b) calculated as a flat charge. Fuel or optional refueling service is not available at all locations and the charges will vary by location. Refueling service charges are generally higher than retail fuel prices at fuel retailers such as service stations. Customer agrees to contact the Destination Location to verify availability of and charges for fuel or optional refueling service before returning the Vehicle.

15. TELEMATIC DEVICE: Each Vehicle may contain a telematic device consisting of a transceiver box, antenna and other related equipment and hardware (collectively "Device"). You agree not to tamper with or disable the Device without the express written consent of Ryder. You shall be responsible for any loss of or damage to the Device at full replacement cost. The Device, all related software and all data collected from the Device shall at all times remain the property of Ryder. The Device may be removed by Ryder at any time or upon termination of this agreement. If Ryder offers and Customer accepts telematic service, Customer shall be subject to the RydeSmart General Terms and Conditions found at www.rydesmart.ryder.com (incorporated herein by reference).

16. COMPLIANCE: Any Vehicle domiciled or rented from a Ryder Location outside of the State of California may not be compliant with all California Air Resources Board requirements. If Customer intends to operate the Vehicle within the State of California, Customer is solely responsible for compliance with all laws and regulations within the State of California. If Customer intends to operate the Vehicle in the State of California, please contact a Ryder employee for assistance or with any questions.

17. MISCELLANEOUS: If a court rules that any one or more provisions, or part thereof, in this Agreement are illegal, invalid, or unenforceable, the remainder of that provision and all other provisions in this Agreement will remain binding, effective and fully enforceable. This Agreement contains the entire agreement between the parties and may be altered only by written amendment signed by both parties. Notwithstanding the foregoing sentence, this Agreement shall govern and control over any Purchase Order or other document issued by Customer in connection with the rental. Ryder will not be liable to Customer if Ryder is prevented from performing under this Agreement by any present or future cause beyond Ryder's control. These causes include, but are not limited to, Acts of God, national emergencies, wars, riots, fires, labor disputes, federal, state, or local laws, rules or regulations. Even if Ryder is unable to perform, Customers obligations under this Agreement will continue. If Ryder delays or fails to exercise any of its rights under this Agreement, or if Ryder partially exercises any right, Ryder will not have thereby waived any of its rights. By failing to declare an act of default, Ryder does not waive that default. Ryder may act on that default at any time. NO PROTECTION OF ANY KIND (INCLUDING PDW, LDW, LIABILITY PROTECTION, SUPPLEMENTAL LIABILITY PROTECTION), WILL BE EFFECTIVE IF THE CUSTOMER (A) CONVERTS THE VEHICLE BY FAILING TO RETURN IT FOR ANY REASON WHEN DUE, AND/OR (B) OTHERWISE IS IN VIOLATION OF THIS AGREEMENT, TO THE EXTENT PERMITTED BY APPLICABLE LAW.

# EXHIBIT B

SENT BY:                    8- 2-86 ; 22:23 ;   RYDER GREAT LAKES-RYDER NASHVILLE DIST:# 2/ 5



# RYDER TRUCK RENTAL, INC.

## TRUCK LEASE AND SERVICE AGREEMENT

THIS AGREEMENT is made as of the **29th** day of **December**, **1983**, between RYDER TRUCK RENTAL, INC., **217 Atwell Ave., Greensboro, NC 27406** (hereafter Ryder) and **JACK HOOD TRANSPORTATION, INC.**, whose address is **104 "E" Street, P.O. Box Q, Michigan City, Indiana 46360** (hereafter Customer).

### 1. EQUIPMENT COVERED AND TERM:

A.  Ryder agrees to lease to Customer and Customer agrees to lease from Ryder the Vehicles on Schedules A hereafter made a part of this Agreement (hereafter Vehicle(s)).  Execution of a Schedule A constitutes Customer's authorization to Ryder to acquire the Vehicles selected by Customer.  The Agreement will become effective with respect to each Vehicle on the date the Vehicle is tendered by Ryder and continue for the term specified on Schedule A unless terminated earlier as provided in this Agreement.

B.  Acceptance of Vehicles in service constitutes Customer's acknowledgement of compliance with Customer's specifications.  Customer agrees to pay for any structural alterations (not to be made without Ryder's prior written consent), special equipment, or material alteration in painting, lettering or art work thereafter required by Customer.  In the event that, subsequent to the date of execution of this Agreement by Ryder, any Federal, state, or local law, ordinance, or regulation requires the installation of any additional equipment, Customer will be responsible for all costs including installation expenses.  Ryder agrees to either install or arrange for such installation and Customer agrees to pay Ryder the full cost.

C.  Where a Vehicle is operated by Customer with a trailer or other equipment not included on a Schedule A, or not maintained by Ryder under a separate agreement, Customer agrees that such trailer and/or equipment will be in good operating condition.  Notwithstanding any other provision of this Agreement, Customer will indemnify and hold Ryder harmless from any claim or loss or damage caused by such trailer and/or equipment.

### 2. OPERATION OF VEHICLES:

A.  The Vehicles will be used and operated by Customer only in the normal and ordinary course of Customer's business, not in violation of any laws or regulations (including legal weight and size limits) and Customer will indemnify and hold Ryder harmless from any claim or loss or damage arising out of any such violation.

B.  Each Vehicle will be promptly returned by Customer to Ryder's facility specified on Schedule A at the end of its lease term unless Customer purchases the Vehicle as provided for hereinafter.

### 3. MAINTENANCE AND REPAIRS TO VEHICLES:

A.  Ryder agrees to provide at its sole cost: (1) Lubricants, tires, tubes and all other operating supplies necessary for the Vehicles; (2) Maintenance and repairs including all labor and parts required to keep the Vehicles in good operating condition; (3) Painting and lettering at the time the Vehicles are placed into service; (4) Exterior washings; and (5) Road service for mechanical or tire failure.

B.  Customer agrees that only Ryder or parts authorized by Ryder will make any repairs or adjustments to Vehicles.  When repairs are necessary, Customer will notify Ryder immediately.  Ryder will not be responsible for the cost of repairs or services not expressly authorized by Ryder.  Customer must submit acceptable vouchers for such repairs or services.

C.  Customer agrees to return each Vehicle to Ryder for service and maintenance at the facility stated on Schedule A for a minimum of 5 hours each week at such scheduled times as agreed to by the parties.

### 4. FUEL:

The party designated on Schedules A agrees to provide fuel for the Vehicles.

A.  When Ryder is designated:

(1)  Fuel will be provided from Ryder's facilities or facilities designated by Ryder.  Charges for fuel will be based on the Rated Fuel Cost including all fuel taxes and will be adjusted as provided on the applicable Schedule A.

(2)  If Customer purchases fuel from sources other than Ryder's facilities or other designated facilities, Ryder will reimburse Customer for such fuel cost upon receipt of an itemized paid invoice.  Such reimbursement will not exceed the Rated Fuel Cost.

(3)  Ryder will, where permitted by law, apply for fuel tax permits, prepare and file fuel tax returns, and pay the taxes imposed upon the purchase and consumption of fuel by Customer provided:  (a) Customer provides Ryder weekly with all documentation necessary to prepare the fuel tax returns and will reimburse Ryder for all charges incurred or credits disallowed as a result of untimely or improper furnishing of such documents, and (b) Customer will reimburse Ryder all such fuel taxes paid on Customer's behalf in excess of those which would have been payable had the fuel consumed been purchased in the state of consumption.

B.  When Customer is designated:

Customer will hold Ryder harmless from any claims or loss resulting from Customer's failure to pay fuel taxes.

### 5. LICENSES:

A.  Ryder agrees to pay for the state motor vehicle license for the licensed weight shown on Schedule A, personal property taxes and Vehicle inspection fees for each Vehicle in the state of domicile, and federal highway use tax, all at the rates and method of assessment in effect on the date of execution of each Schedule A.  Customer will be responsible for any increases or changes in assessment of these items thereafter.

B.  Where legal, Ryder will apply for vehicle licenses and prorate or state reciprocity plates at Customer's request and cost.

SENT BY:                          8- 2-86 ; 22:23 ;   RYDER GREAT LAKES-RYDER NASHVILLE DIST:# 3/ 5

C.  Customer agrees to pay for any special license or pay any taxes resulting from the operation and use of the Vehicles by Customer including mileage taxes, ton mileage taxes, highway or bridge tolls. Ryder shall have the right to settle any claim of lien involving any Vehicle as a result of Customer's failure to pay any such taxes and Customer will reimburse Ryder immediately.

**1.  SUBSTITUTION:**
Ryder agrees to furnish a substitute vehicle at no extra charge for any Vehicle, other than those excepted below, which may be temporarily inoperable because of mechanical failure, the substitute to be as nearly as practicable the same size as the Vehicle.  The substitute will be furnished to Customer where the Vehicle was disabled and will be returned by Customer to the Ryder facility that provided it.  Ryder will not furnish a substitute for any Vehicle that is out of service for ordinary maintenance and service line; or is out of service for repair of any form of physical damage resulting from causes including fire, collision, or upset; or is lost or stolen; or is out of service for repair of damage resulting from Customer's violation of any provision of this Agreement; or is out of service for repair or maintenance of special equipment for which Ryder is not responsible.  Ryder's failure to furnish a substitute vehicle within a reasonable time when required will cause the charges for the inoperable Vehicle to abate until the Vehicle is returned to Customer's service or a substitute is available.  Ryder's liability in the event of such a failure will be limited to abatement of charges for the inoperable Vehicle.  A substitute vehicle, while in Customer's service, will be subject to all the terms and conditions of this Agreement.  While a Vehicle is out of service because of damage resulting from any form of physical damage, Ryder will rent Customer a replacement vehicle, if available, at a rate equal to the charge for the inoperable Vehicle.  Irrespective of whether or not Customer rents a vehicle from Ryder while a Vehicle is out of service for repair of physical damage, the charges applicable to it will not abate.

**7.  DRIVERS:**
A.  Customer agrees that each Vehicle will only be operated by a properly licensed driver, at least 18, who is the employee or agent of Customer, subject to Customer's exclusive direction and control, and that Vehicles will not be operated by a driver in possession of or under the influence of alcohol or any drug which may impair the driver's ability.  Customer agrees to reimburse Ryder in full for loss of or damage to Vehicles, including related expenses, if Vehicles are operated by drivers under 18.  Upon receipt of a written complaint from Ryder specifying any reckless, careless or abusive handling of a Vehicle or any other incompetence by or of any driver, and requesting the driver's removal as an operator of Vehicles, Customer will immediately remove such individual as a driver of Vehicles.  In the event that Customer fails to do so, or is prevented from so doing by any agreement with anyone on the driver's behalf:  (1) Customer will, notwithstanding any other provisions of this Agreement, reimburse Ryder in full for any loss and expense sustained by Ryder for damage to any Vehicle when being operated by such individual and Customer will indemnify and hold Ryder completely harmless from any claims or causes of action for death or injury to persons or loss or damage to property arising out of the use or operation of any Vehicle by such individual notwithstanding that Ryder may be designated on applicable Schedules A as responsible for furnishing and maintaining Liability Insurance; and (2) Ryder may, at its election and at any time thereafter upon 30 days notice to Customer, terminate any Liability Insurance coverage extended by Ryder, and may, at its election, with respect to each Vehicle, increase the amount of Customer's physical damage responsibility to an amount equal to the agreed value calculated in accordance with Paragraph 11D as of the time of damage or loss.
B.  Ryder agrees, at Customer's request, to assist Customer in developing a driver education and safety program.
C.  Customer agrees that the Vehicles will not be operated in a reckless or abusive manner, or off an improved road, or on a flat tire, or improperly loaded, or loaded beyond the manufacturer's recommended maximum gross weight, or to transport any property of material deemed extra hazardous by reason of being poisonous, inflammable, explosive, or fissionable.  Notwithstanding any other provision of this Agreement, and irrespective of which party is responsible for physical damage to Vehicles pursuant to Paragraph 10B, Customer agrees to reimburse Ryder in full for damage to any Vehicle, including expenses, resulting from a violation of this provision.  Customer will be responsible for all expenses of towing any mired Vehicle when not in Ryder's possession or on Ryder's premises.

**8.  CHARGES:**
A.  Customer agrees to pay Ryder the fixed monthly charge for each Vehicle upon receipt of Ryder's invoice and to pay all other charges within 10 days of the date of Ryder's invoice without deduction or setoff.
B.  Mileage will be determined from odometer readings.  If the odometer fails to function, Customer will immediately report it to Ryder.  The mileage for the period in which the failure existed may then be determined at Ryder's option from (1) Customer's trip records; or (2) the amount of fuel consumed and the miles per gallon record of Ryder averaged for the previous 30 days.
C.  Customer agrees to promptly provide Ryder with current financial statements and other financial information as requested.

**9.  ADJUSTMENT:**
A.  The charges in this Agreement are based on Ryder's current cost of labor, parts, and supplies.  These costs may fluctuate after the date of execution of this Agreement.  Customer agrees that for each rise or fall of 1% in the Revised Consumer Price Index for Urban Wage Earners and Clerical Workers (1967 base period), published by U.S. Bureau of Labor Statistics), above or below the base index figure on Schedule A, charges for each Vehicle will be adjusted upward or downward as follows:

1% of 50% of the Fixed Rental Charge and 1% of 100% of the Mileage Rate, excluding all Rated Fuel Cost
1% of 60% of the Mileage Rate excluding all Rated Fuel Cost (but including Mileage Guaranty)
   for Mileage only Rated Vehicles
1% of 100% of the hourly charge (only for refrigeration equipment)

B.  Adjustments will be based on the original charges stated on Schedule A and be effective on the first day of January and July based on the latest index published prior to such effective date.  In the event the Revised Consumer Price Index for Urban Wage Earners and Clerical Workers is discontinued, another mutually acceptable cost adjustment index will be chosen.
C.  Customer agrees to pay for (1) any sales or use tax now or hereafter imposed upon the use of the Vehicle or on the rental or other charges accruing hereunder; (2) any increase in license or registration fees, federal highway use taxes, vehicle inspection fees, fuel tax permits, and personal property tax; or (3) any new or additional tax or governmental tax adopted after the ...

SENT BY:                    9- 2-98 ;  22:24 ;    RYDER GREAT LAKES-RYDER NASHVILLE DIST;#  4/ 5

**INSURANCE:**

**A.   Liability Insurance Responsibility**

(1)   A standard policy of automobile liability insurance (hereafter Liability Insurance) with limits specified on each Schedule A will be furnished and maintained by the party designated on Schedule A at its sole cost, written by a company satisfactory to Ryder, covering both Ryder and Customer as insureds for the ownership, maintenance, use or operation of the Vehicles and any substitute vehicle. Such policy will provide that the coverage is primary and not additional or excess coverage over insurance otherwise available to either party and that it cannot be canceled or materially altered without 30 days prior written notice to both parties. The party designated will furnish to the other certificates to evidence compliance with this provision.

(2)   Upon not less than 30 days prior written notice to Customer, Ryder may terminate Liability Insurance coverage maintained by Ryder and Customer will be obligated to procure and maintain Liability Insurance in the limits set forth on Schedule A as of the effective date of termination and the charges will be adjusted accordingly.

(3)   If Customer is obligated to procure and maintain Liability Insurance and fails to do so, or fails to promptly furnish Ryder the required evidence of insurance, Customer agrees to indemnify and hold Ryder harmless from and against any claims or causes of action for death or injury to persons or loss or damage to property arising out of or caused by the ownership, maintenance, use, or operation of any Vehicle, and Ryder is authorized but not obligated to procure such Liability Insurance, without prejudice to any other remedy Ryder may have, and Customer will pay Ryder, as additional rental, the amount of the premium paid by Ryder.

(4)   Customer agrees to release, indemnify, and hold Ryder harmless from and against any claims or causes of action for death or injury to persons or loss or damage to property in excess of the limits of Liability Insurance, whether provided by Ryder or Customer, arising out of or caused by the ownership, maintenance, use or operation of any Vehicle or substitute vehicle, and any such claims or causes of action which Ryder may be required to pay as a result of any statutory requirements of insurance and which Ryder would not otherwise, pursuant to the terms hereof, be required to pay.

(5)   Ryder will, where required and legal, at Customer's request, file evidence of automobile liability insurance required by Federal or state governmental authorities when Ryder is designated as responsible for Liability Insurance.

(6)   Customer further agrees to release and hold Ryder harmless for death or injury to Customer, Customer's employees, drivers, passengers or agents, arising out of the ownership, maintenance, use or operation of any Vehicle or substitute vehicle.

**B.   Physical Damage Responsibility**

The party designated on Schedule A will pay for loss or damage to any Vehicle subject to the following:

(1)   When Ryder is designated:

a. Ryder will assume and pay for loss (including theft) or damage to each Vehicle in excess of the deductible amount specified on Schedule A EXCEPT (1) any willful damage to the Vehicle, specifically including but not limited to damage arising out of or in connection with any labor dispute to which Customer is a party; (2) conversion of any Vehicle by an agent or employee of Customer; and (3) the loss of tools, tarpaulins, accessories, spare tires and other such appurtenances. Customer agrees to pay up to the amount specified on Schedule A for loss (including theft) or damage to each Vehicle, including related expenses, from each occurrence and will pay for all loss (including theft) or damage to any Vehicle resulting from any perils specifically excepted in this Paragraph.

b. Upon not less than 30 days prior written notice to Customer, Ryder may designate Customer as responsible for all physical damage to Vehicles. In such event, Customer will be obligated to procure and maintain complete physical damage insurance coverage reasonably acceptable to Ryder. Ryder's charges to Customer will be decreased to reflect the change in designation of the responsibility for physical damage. Whenever Customer is obligated to procure and maintain physical damage coverage and fails to do so, or fails to promptly furnish Ryder with complete certificates evidencing such coverage, Customer agrees to pay Ryder for all loss (including theft) or damage to any Vehicle or substitute vehicle from all causes whatsoever.

(2)   When Customer is designated:

a. Customer will be responsible and pay for all loss (including theft) or damage to any Vehicle or substitute vehicle, including related expenses arising from any cause and regardless of how, including Ryder's negligence, or where, including Ryder's premises, the loss or damage occurred. Customer's liability for any Vehicle will not exceed the purchase price for the Vehicle computed according to Paragraph 11D at the time of such loss or damage.

b. Customer agrees to furnish Ryder with evidence of physical damage insurance coverage reasonably acceptable to Ryder with Ryder listed as a named insured or endorsed as a loss payee and having a deductible amount not to exceed the amount specified on Schedule A.

**C.   Notice of Accident**

Customer agrees to immediately notify Ryder of any accident, collision, loss (including theft), or damage involving a Vehicle or substitute vehicle; to cause the driver to make a detailed report in person at Ryder's office as soon as practicable; and to render all other assistance reasonably requested by Ryder and the insurer in the investigation, defense, or prosecution of any claims or suits.

**D.   Cargo Insurance Responsibility**

Ryder will have no liability for loss of or damage to any goods or other property in or carried on any Vehicle or substitute vehicle whether such loss or damage occurs in a Ryder facility or elsewhere, occurs due to any negligence on Ryder's part, or occurs as a result of any other failure on Ryder's part. Customer hereby assumes all such risk of loss or damage, waives any claim it may have against Ryder, and agrees to release, indemnify, defend, and hold Ryder harmless from all liability for such loss or damage to cargo. Customer agrees to reimburse Ryder for loss of any tools, tarpaulins, spare tires, or other similar equipment furnished by Ryder.

**E.   Vehicle Theft or Destruction**

If a Vehicle is lost or stolen and remains so for 30 days after Ryder has been notified, the lease as to such Vehicle will then terminate provided all charges for the Vehicle have been paid to that date and provided any amounts due Ryder pursuant to Paragraph 10B have been paid. Ryder will not be obligated to provide a substitute vehicle during this 30 day period. If a Vehicle is, in Ryder's opinion, damaged beyond repair, Ryder will notify Customer within 30 days after Ryder has been advised of the loss. Upon receipt of Ryder's notice that the Vehicle has been damaged beyond repair, provided all charges for the Vehicle have been paid to that date and provided any amounts due Ryder pursuant to Paragraph 10B hereof have been paid, the lease as to such Vehicle will then terminate.

**II.   TERMINATION:**

**A.**   Either party may terminate the lease of any Vehicle prior to expiration of its term on any anniversary date of its Date of Delivery indicated on the Schedule A by giving to the other party at least 60 days prior written notice. If termination is effected by Ryder, Customer will have the right, but not the obligation, to purchase in accordance with Paragraph 11D all Vehicles with respect to which termination notice has been given on the termination date(s). If termination is effected by Customer, Customer will at Ryder's option purchase in accordance with Paragraph 11D all Vehicles with respect to which termination notice has been given on the termination date(s).

. In the event Customer becomes insolvent, files a voluntary petition in bankruptcy, makes an assignment for the benefit of litors, is adjudicated a bankrupt, permits a receiver to be appointed for its business, or permits or suffers a material disposition of ......, the lease of Vehicles will terminate at the election of Ryder. Upon written notice thereof sent to Customer, Ryder may at its .... .mand that Customer purchase the Vehicles within 10 days of termination in accordance with Paragraph 11D.

.. Breach or Default

   (1)   If Customer breaches or is in default of any provision of this Agreement and that breach or default is not cured within 7 '. after written notice has been mailed to Customer, Ryder may immediately, without further notice or demand, take possession of Vehicles. Ryder will be entitled to enter upon any premises where the Vehicles may be and remove them and refuse to redeliver .... to Customer until such breach or default is cured without any of such actions being deemed an act of termination and without ...judice to the other remedies Ryder may have under this Agreement and at law. Customer will continue to be liable for all charges .....ing during the period the Vehicles are retained by Ryder.

   (2)   In the event Ryder takes possession of any Vehicle and there is any property in or upon the Vehicle which belongs to or is the custody or control of Customer, Ryder may take possession of such items and either hold them for Customer until Customer ....ims them or place them in public storage for Customer at Customer's expense.

   (3)   If Customer's breach or default continues for 7 days after written notice has been mailed to Customer, Ryder may ter-......te the Agreement. Upon termination, Ryder may demand that Customer purchase within 10 days of termination any or all .....icles in accordance with Paragraph 11D without prejudice to other remedies Ryder may have under this Agreement and at law.

   (4)   Customer agrees to pay Ryder all Ryder's costs and expenses, including reasonable attorney's fees, incurred in collecting .....ounts due from Customer or in enforcing any right of Ryder hereunder.

D.   In the event Customer (pursuant to Paragraph 11A) shall be required to purchase any Vehicle, or should Ryder (pursuant to ...aragraph 11B or 11C) demand of Customer that it purchase any Vehicle, Customer agrees to purchase each such Vehicle for each ....thin the time provided for in this Agreement for its Original Value as shown on Schedule A, less the total depreciation which has ac-.....ed for such Vehicle in accordance with Schedule A. Additionally, Customer agrees to pay Ryder for the amount of any unexpired ....cense, applicable taxes, including personal property taxes and federal highway use taxes, and other prepaid expenses previously paid .. Ryder for the Vehicles prorated to the date of sale and will be responsible for any sales or use tax arising from the purchase. .ustomer will have no obligation or right to purchase any Vehicle as to which the term on Schedule A has expired.

**1.   ASSIGNMENT OF LEASE:**
   This Agreement will be binding on the parties hereto, their successors, legal representatives and assigns. Customer agrees to prompt-..' notify Ryder in writing prior to all substantial changes in ownership or any material disposition of the assets of Customer's business. .ustomer does not have the right to sublease any of the Vehicles, nor to assign this Agreement or any interest therein without Ryder's .rior written consent, which consent will not be unreasonably withheld, and any attempt to do so will be void.

°   **FORCE MAJEURE:**
   .yder will incur no liability to Customer for failure to supply any Vehicle, provide a substitute vehicle, repair any disabled Vehicle, .r provide fuel for Vehicles, if prevented by a national emergency, wars, riots, fires, labor disputes, Federal, state, or local laws, rules, ....egulations, shortages (local or national), or fuel allocation programs, or any other cause beyond Ryder's control whether existing now .r hereafter. Notwithstanding Ryder's inability to perform under these conditions, Customer's obligations hereunder will continue.

1..   **NOTICES:**
   Notices provided for herein will be in writing and mailed to the parties at their respective addresses set forth above.

1..   **GENERAL:**
   This Agreement will not be binding on Ryder until executed at its Miami Headquarters by a person duly authorized and will then ....nstitute the entire agreement and understanding between the parties concerning the Vehicles, notwithstanding any previous writings .r oral undertakings, and its terms will not be altered by any oral agreement or informal writing, nor by failure to insist upon perfor-....ance, or failure to exercise any rights or privileges, but alterations, additions, or changes in this Agreement will only be accomplished by written endorsements, amendments, or additional Schedules A to this Agreement executed by both parties.



| RYDER TRUCK RENTAL, INC. | JACK HOOD TRANSPORTATION, INC. |
|---|---|
| **(RYDER)** | **(CUSTOMER)** |
| By: _J. Dodson_ | By: _Jack Hood Pres._ |
| Name/Title: J. DODSON  Supervisor · Contracts | Name/Title: Jack Hood, President |
| Date: JUN 1 8 1984 | Date: January 3, 1984 |
| Witness: | Witness: |



### Ryder ChoiceLease Full Service
### TRUCK LEASE & SERVICE AGREEMENT (TLSA)
### SCHEDULE A

| Customer Name:<br>JACK HOOD TRANSPORTATION INC | Customer Vehicle Domicile:<br>Phoenix, AZ | Lease Number:<br>10760 |
|---|---|---|
| Ryder Maintenance Facility Number & Name:<br>3125 OPS-ROCKY MOUNTAIN BU-138 Phoenix, AZ | Schedule A No.<br>DS 279970 | Schedule A Date:<br>April 11th, 2018 | TLSA Date:<br>December 29th, 1983 |

1. **Vehicles** This Schedule A shall cover the following 1 Vehicle(s):

| | | Vehicle Information | | |
|---|---|---|---|---|
| Ryder<br>Unit No. | Customer<br>Unit No. | Date of Delivery | Serial Number | Replaces Ryder<br>Unit No. |
| 1. 863587 | | / / | | |

The parties acknowledge and agree that certain information required to complete this Section may not be available upon execution of this Schedule and that Ryder will furnish any such information upon delivery of the Vehicle(s). Notwithstanding anything to the contrary in the Agreement or this Schedule A, (i) it is the sole responsibility of Customer to ensure that the condition of the Vehicle(s) is acceptable to Customer for its intended use, and that use of the Vehicle(s) will not result in any violation of any laws, regulations, or ordinances applicable to each use and (ii) Customer will return the Vehicle(s) and all accessory items clean, dry, and free of odor, debris, pests, insects, contamination, or infestation.

2. **Lease Terms:** The following terms shall apply to each Vehicle listed on this Schedule A:

| | | | |
|---|---|---|---|
| Original Value: | $88,472 | (Optional) Expiration Date: | April 30, 2021 |
| Monthly Depreciation: | $494.46 | Fixed Charge Per Month: | $1,618.00 |
| Max GCW/GVW and/or Licensed Weight: | 35,000 | | |
| Estimated Annual Mileage: | 35,000 | Mileage Rate per Mile | $ 0.0600 |

**Lease Term and Early Termination Option:** The full lease term for each Vehicle shall be 84 months from its Date of Delivery (the "Full Lease Term"). You shall have the right, without penalty, to early terminate the lease term of any vehicle on the Expiration Date (listed above). To exercise this option, you must provide Ryder with written notice of such intent prior to the December 1st that immediately precedes the Expiration Date (listed above). For the avoidance of doubt, if you do not provide timely notice of your intent to early terminate as provided herein, the lease term for each applicable Vehicle shall continue for the Full Lease Term.

3. **Vehicle Component Information:** Each Vehicle listed on this Schedule A is comprised of the following components:

| | | Component Information | | |
|---|---|---|---|---|
| Component | Model<br>Year | Description | Original<br>Value | Monthly<br>Depreciation |
| Cab/Chassis | 2019 | FRTL M2 106MD S/A ST TRK | $67,878 | $383.60 |
| Body | 2019 | Morgan 26' Aluminum Body | $12,256 | $65.98 |
| Liftgate | 2019 | Maxon GPTWR-3 Combo | $8,338 | $44.88 |

4. **Vehicle Lease:** The terms of each Vehicle listed on this Schedule A shall constitute a separate and independent lease agreement subject to the terms and conditions contained in: (i) the TLSA; (ii) any amendments to the TLSA; (iii) this Schedule A; and (iv) any other written agreement between Ryder and you regarding that Vehicle (including, without limitation, any Vehicle Purchasing Customer proposal Specifications Sheets signed by Customer). Any reference to the TLSA contained in any of the foregoing documents shall be deemed to refer to each and every Vehicle lease. Payments relating to an invoice for multiple Vehicles will be allocated on a pro-rata basis among the covered Vehicles. The terms of this Schedule A apply to all Vehicles listed on this Schedule A and are part of each respective Vehicle lease. If there is a conflict between the terms of this Schedule A and any other terms of the TLSA, then the terms of this Schedule A will apply.

5. **Investment:** The Original Value, Monthly Depreciation and Fixed Charge Per Month listed above are based, in part, upon the manufacturer's quoted price as of the date you execute this Schedule A. If the manufacturer's quoted price increases prior to the Date of Delivery of a Vehicle, then you agree that for each $50 increase in price (or fraction thereof), Original Value shall be increased by $50.00, Monthly Depreciation shall be increased by $0.69, and the Fixed Charge per Month shall be increased by $1.30.

6. **Original Identification Cost:** $0 . If this amount varies by $50.00 or more in price, the Original Value, Monthly Depreciation and Fixed Charge per Month will be adjusted as indicated in (5) above.

7. **Estimated Annual Mileage:** You may not operate any Vehicle more than 20% in excess of the Estimated Annual Mileage in any 12-month period. If during any 12-month period, the actual miles on any Vehicle exceeds the Estimated Annual Mileage listed on this Schedule A by 20 %, then, in addition to all other rights and remedies hereunder, Ryder will assess a surcharge of $0.0500 per mile for all miles over the Estimated Annual Mileage and you agree to pay this surcharge in addition to all other amounts due Ryder within the time provided in the TLSA. You will not be entitled to a credit or carry forward if actual annual miles is less than the Estimated Annual Mileage.

8. **Estimated Annual Engine Hours for Refrigerated Trailers and Straight Trucks ("Refrigerated Vehicles"):** Not Applicable.

9. **Estimated Annual Standby Refrigeration:** Not Applicable.

10. **The CPI Base Index:** Not applicable.

11. **Per Vehicle Annual Allowances:** The allowances described below are included in the Fixed Charge Per Month. If the actual cost of any item(s) listed below, including any costs incurred in states other than those listed, exceeds the annual allowance amount for that item, then you agree to pay Ryder the excess, in addition to all other lease charges.

| Description | Annual Allowance Amount |
|---|---|
| Vehicles listed on this Schedule A operate in State(s) of: AZ | |
| State Motor Vehicle License, Registration and Inspection fees | $1,645 |
| IFTA / Mileage Tax Permits | $0 |
| Federal Heavy Vehicle Use Taxes | $0 |
| Personal Property Taxes | $0 |

12. **Vehicle Related Services:**

| Vehicle Related Services | Provided By/Comments |
|---|---|
| Substitute Vehicles | Ryder also provided during PMs |
| Exterior Washing | Ryder (at Ryder's standard intervals) |
| Safety Services | Ryder |
| Licensing | Ryder Base Plate |
| IFTA/Mileage Tax Permitting & Reporting | Ryder |
| Facility Parking | Ryder |

13. **Fuel:** Ryder will provide fuel for the Vehicles and charge you for any fuel it provides in accordance with the terms of the TLSA and in addition to all other lease charges. You will be responsible for the cost of any fuel obtained from sources other than Ryder or Ryder's designated facilities. If your account is past-due, Ryder may elect to stop providing fuel to you 3 days from the date that

140-388608   JACK HOOD TRANSPORTATION INC   Sch
#: DS 279970 / Sch Date: 4/11/2018          Page 2 of 4          RI ID: 1996959          04/11/2018 11:32:52 AM

General Page 3

Ryder sends written notice to you. All fuel used in the Vehicle that is obtained from a third party other than Ryder shall be of a type and grade that meets all manufacturers' recommendations and the requirements of applicable law.

14. **Party Responsible for Liability Insurance:** You . Combined Single Limits $2,000,000 per occurrence. Ryder Truck Rental LT and Ryder Truck Rental, Inc. shall each be an additional insured under your Liability Insurance policy and a beneficiary of your indemnities in accordance with the TLSA. Your certificate of insurance must include by special endorsement or otherwise, Ryder as an additional insured for all vehicles leased, rented, substituted or supplied to you by Ryder.

15. **Party Responsible for Physical Damage:** You shall be responsible for all loss or damage to the Vehicles in accordance with the TLSA. Charges will not abate while the Vehicle is being repaired for Physical Damage during the lease term or at expiration. If a vehicle is lost, stolen or damaged beyond economic repair, then you agree to pay Ryder its purchase price at the time of loss and related costs and expenses as determined under the TLSA. At the expiration of a Vehicle's Term in Months (or upon earlier termination if you are not required to purchase the Vehicle), you shall pay Ryder the cost to de-identify each Vehicle and return the Vehicle to the Ryder service location listed on this Schedule A in good and working order without Physical Damage (normal wear and tear excepted). If you fail to do so, you shall continue to be liable for all obligations under this Agreement until you return the Vehicle to Ryder in accordance with this provision.

16. **Other:**

**In-Service:** The lease term for each Vehicle begins when the Vehicle is placed in Customer's service, or 48 hours after notice has been given by Ryder to Customer that the Vehicle is available for pick-up, whichever occurs first, and shall continue for the period specified on this Schedule unless the lease term is terminated earlier as permitted in the Agreement.

**Hold-Over:** Unless you execute a Schedule A(s) to the Agreement prior to the expiration of the lease of a Vehicle(s) for a replacement vehicle(s) of an equal or greater class size upon reasonable terms and conditions acceptable to Ryder, your fees current fixed and variable charges will increase by 20% for the first 12 months of any hold-over term and shall increase an additional 20% on each anniversary date of the original expiration of the Term in Months. Upon the expiration of the Term in Months, you shall have a grace period of 30 days before Ryder implements the increase set forth herein. If you operate any Vehicle after its lease term has ended, the terms of the TLSA will apply to the hold-over lease, but either party shall have the right to terminate the hold-over lease upon 30 days' prior written notice to the other party.

**Inspections:** Customer shall conduct pre and post inspections of the Vehicle, complete required reports, and promptly notify Ryder of any Vehicle condition issues. Ryder will not be liable for any Federal Motor Carrier Safety Administration ("FMCSA") violations or other citations for which Ryder was not provided notice.

**Substitute Vehicles:** Where applicable, Ryder shall provide the Substitute Vehicle where the Vehicle was disabled and Customer shall return it to the facility that provided it within a reasonable time after Ryder notifies Customer that the Vehicle is ready for pick-up, after which time rental rates will apply.

**Consent:** This Schedule A contains information regarding each Vehicle selected by you and is a part of the TLSA . When you sign this Schedule A, you authorize Ryder to obtain the Vehicle(s) listed on this Schedule A and agree to take delivery of them. The lease Term for the Vehicle(s) will begin upon Ryder tenders it to you and will continue for the period specified on this Schedule A unless the lease Term is terminated earlier as permitted by the TLSA .

**Additional Services:** Except for the lease charges listed on this Schedule A , all charges for goods and services under the TLSA , including any services subcontracted by Ryder, will be billed per Ryder's retail sales and service procedures and charges then in effect.

**Disclaimer of Warranties:** RYDER MAKES NO EXPRESS OR IMPLIED WARRANTY REGARDING THE VEHICLES, CHARGES OR ANY OTHER MATTER WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A SPECIAL OR PARTICULAR PURPOSE.

**Waiver:** EACH PARTY WAIVES AND RELEASES THE OTHER PARTY FROM ANY CLAIMS OR LIABILITY FOR ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS. BOTH RYDER AND CUSTOMER WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY SUIT RELATING TO THE TRANSACTIONS CONTEMPLATED BY THE TLSA .

**Default on Rental or Return:** If you are in default under any rental agreement with Ryder, you will also be in default under the TLSA . If you are in default under the TLSA , you will also be in default under any rental agreement with Ryder.

**Confidentiality:** You agree to maintain the confidentiality of the terms and rates contained in the TLSA and agree not to disclose our rates and terms unless required by law.

**Indemnity Survival:** All of the defense, release, indemnification, insurance and hold harmless provisions in the TLSA shall survive the termination or expiration of the TLSA for any reason .

**OPIS Base Price:** Notwithstanding anything to the contrary in the TLSA, as of January 15, 2018, the "OPIS Base Price" for fuel shall mean the Oil Price Information Service ("OPIS") Ultra Low Sulfur Diesel Gross Contract Average Cost of Fuel (as of the day

140-3835/09 JACK HOOD TRANSPORTATION INC   Sch
I: DK 279970 / Sch Desc: 4/11/2018            Page 3 of 4        RS ID: 1996059        04/11/2018 11:32:32 AM

General Page 4

prior to the date of purchase) for the locality where the fuel is purchased (or the closest location or terminal for which OPIS publishes its index).

| | |
|---|---|
| **RYDER TRUCK RENTAL, INC., d/b/a**<br>**RYDER TRANSPORTATION SERVICES**<br>(Ryder) | **JACK HOOD TRANSPORTATION INC**<br>(Customer/You) |
| By: | By: |
| Name:   Bobby Cates | Name:   JEFF HOOD |
| Title:   Group Director National Sales (GDNS) | Title:   Pres / CEO |
| Date:   04/16/2018 | Date:   4/11/18 |

140-200600  JACK HOOD TRANSPORTATION INC   Sch 8: DS 270070 / Sch Date: 4/11/2018           Page 4 of 4           RS ID: 1994939           04/11/2018 11:22:33 AM

General Page 5

# EXHIBIT C



1    BAUTISTA LAW GROUP, PLLC
     4140 E Baseline Road, Suite 101
2    Mesa, Arizona 85206
3    Phone: (480)399-6302
     Lindsay S Bautista, #032984
4    lindsay@bautistalawgroup.com
     Attorney for Plaintiff
5

AUG - 9 2019

CLERK OF THE SUPERIOR COURT
J. FOLTS
DEPUTY CLERK

6              IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

7                   IN AND FOR THE COUNTY OF MARICOPA

8    SHEILA THOMAS, filing individually,      NO:  CV2019-095533

9            Plaintiffs,
10
                                              COMPLAINT
11   vs.
                                              (Negligence)
12   RYDER TRUCK RENTAL, a foreign
     corporation DBA RYDER
13   TRANSPORTATION SERVICES; JOHN
     DOES I-V; JANE DOES I-V, fictitious
14   individuals; ABC CORPORATIONS and/or
15   PARTNERSHIPS and/or SOLE
     PROPRIETORSHIPS and/or JOINT
16   VENTURES, I-X; fictitious entities,

17           Defendants.
18

19
            Plaintiff, SHEILA THOMAS by and through counsel undersigned, for her
20

21   Complaint, alleges as follows:

22   1.     Plaintiff, SHEILA THOMAS, is an unmarried woman and a resident of Maricopa
23
24   County, Arizona.

25   2.     The incident described in this Complaint occurred in Maricopa County and all acts

26   and omissions complained of in this Complaint occurred in Arizona.

27

28

                                       -1-

3.      Venue is proper in Maricopa County. The amount in controversy in this matter meets the minimum jurisdictional amount required for Superior Court jurisdiction.

4.      **Discovery Tier**: The value of this case exceeds $50,000.00. Pursuant to Arizona Rules of Civil Procedure, Rule 26.2 (c) (3), the Court should assign my case to the following tier based on the amount of damages I request.

_____ Tier 1 = Actions claiming $50,000.00 or less in damages

_____ Tier 2 = Actions claiming more than $50,000.00 and less than $300,000.00 in damages, OR actions claiming non-monetary relief.

__X__ Tier 3 = Actions claiming $300,000.00 or more in damages.

5.      Upon information and belief, Defendant, RYDER TRUCK RENTAL, INC, a foreign entity, is believed to be authorized to do and is doing business in Arizona, and caused an event to occur in Arizona that is the subject of Plaintiff's Complaint herein.

6.      Defendants JOHN DOE and JANE DOE I-X are individuals or married couples whose identities are presently unknown and not reasonably ascertainable to Plaintiffs, and who committed some or all of the acts complained of herein.

7.      Defendants ABC Corporation and/or Partnerships I-X are Arizona or foreign corporations and/or general or limited partnerships whose identities are presently unknown and not reasonably ascertainable to Plaintiff, and who committed some or all of the acts complained of herein.

-2-

8. The identities of the fictitiously named Defendants are presently unknown to Plaintiff and leave of Court will be sought to amend this Complaint once their identities are discovered.

9. The identities of the fictitiously named Defendants are presently unknown to Plaintiff and leave of Court will be sought to amend this Complaint once their identities are discovered.

10. The individual Defendants, if married, were at all times alleged acting on behalf of their marital community.

11. The amount in controversy satisfies the jurisdictional requirement of the Superior Court.

12. On or about August 11, 2018, Plaintiff SHEILA THOMAS sustained personal injuries when the lift gate on a truck owned by Defendant failed and fell on her foot.

13. Defendant RYDER TRUCK RENTAL, INC failed to properly maintain or repair their vehicle causing a dangerous condition unknown to Plaintiff.

14. Plaintiff SHEILA THOMAS sustained injuries for which she underwent medical care/treatment.

15. The incident was caused by the negligence and carelessness of Defendants' in failing to maintain their vehicle lift gate in a reasonably safe condition, failing to warn Plaintiff of the dangerous condition, and failing to remedy the dangerous condition.

16. Defendants' actions and/or inactions in their mode of operation, their failure to properly maintain the vehicle lift gate in a reasonably safe manner, their failure to warn

-3-

1   about, and guard against, the dangers presented by the dangerous condition, and failing to

2   remedy the dangerous condition all separately or together were negligent.

3
4   17.     Defendants' negligence was the proximate cause of the above-referenced

5   collision.

6   18.     As a direct and proximate result of Defendants' negligence, Plaintiff SHEILA

7
8   THOMAS sustained severe, permanent and disabling injuries which have resulted in

9   considerable pain, suffering, inconvenience and loss of enjoyment of life, and may

10  cause future pain and suffering.

11  19.     As a further direct and proximate result of the Defendants' negligence, Plaintiff
12
13  SHEILA THOMAS has incurred medical and related expenses for care and treatment and

14  may continue to do so in the future.

15  20.     As a further direct and proximate result of the Defendants' negligence, Plaintiff
16
17  SHEILA THOMAS has incurred lost wages and may continue to do so in the future.

18          WHEREFORE, Plaintiff SHEILA THOMAS requests judgment against the

19  Defendants, and each of them, as follows:

20
21  1.      For general damages in a fair and reasonable amount;

22  2.      For the reasonable value of Plaintiff's medical and related expenses incurred to

23  date and any future expenses;

24
25  3.      For the reasonable value of Plaintiff's wage loss;

26  4.      For the reasonable value of Plaintiff's mileage expenses;

27

28

-4-

1  5.      For interest on the judgment for Plaintiff's general damages at the maximum rate

2  allowed by law from the date each item of general damages was incurred until paid; for

3

4  interest on the judgment for Plaintiff's special damages at the maximum rate allowed by

5  law from the date each item of special damages was incurred until paid;

6  6.      For Plaintiff's costs and expenses incurred to date, and to be incurred in the future

7

8  in this action; and

9  7.      For such other and further relief as the Court may deem just and proper.

10          DATED THIS _9_ DAY OF August, 2019.

11

12                              BAUTISTA LAW GROUP

13

14                              Lindsay S Bautista, Esq.
                                Attorney for Plaintiff

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-5-

# EXHIBIT D

## BUSINESS AUTO DECLARATIONS



Issued by  Liberty Insurance Corp.

Policy Number AS7-Z91-466370-017
Renewal of  AS7-Z91-466370-016
Account Number 9-466370

Issuing Office 0969
Issue Date     10/02/2017

ITEM ONE - Named Insured and Mailing Address

Jack Hood Transportation Inc
10827 W 400 N
Michigan City, IN  46360

Form of
Business: Corporation

Business of the
named insured is: Books, Periodicals, and
                 Newspapers

Policy Period: The policy period is from 10/15/2017     to 10/15/2018     12:01 A.M. standard time at the
Insured's mailing address.

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to
provide the insurance as stated in this policy.

ITEM TWO – Schedule of Coverages and Covered Autos - Refer to Pages 2 and 3

### SCHEDULE

The declarations are completed on the following pages and on the accompanying "Declarations Extension
Schedule(s)".

Schedule Premium  $735,960
Endorsement Premium

Total Estimated Premium  $735,960
Other Charge(s)  $1,749.23

Policywriting Minimum Premium  $500
Premium will be billed
Forms Applicable:  See Attached Inventory

Producer     0073-189972
ANDERSON INSURANCE
570 VALE PARK RD STE A
VALPARAISO, IN  463852501

Countersigned By:

Authorized Representative

AC 00 03 02 13

© 2012 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc.
with its permission.

Page 1 of 3

Policy Number  AS7-Z91-466370-017

ITEM TWO – Schedule of Coverages and Covered Autos

This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the COVERED AUTOS Section of the Business Auto Coverage Form next to the name of the coverage.

| Coverage | Covered Autos | Limit | | Premium |
|---|---|---|---|---|
| Liability (LIAB)* | 01 | $2,000,000 | | $644,458 |
| Compulsory Bodily Injury (MA only) | | $ 20,000  Each Person<br>$ 40,000  Each Accident | | INCL |
| Optional Bodily Injury (MA only) | | Each Person<br>Each Accident | | INCL |
| Property Damage (Compulsory Limit $5,000) (MA only) | | Each Accident | | INCL |
| Personal Injury Protection (PIP) (or equivalent No-Fault Coverage) | 05 | Separately stated in each PIP Endorsement | | $2,623 |
| Added Personal Injury Protection (PIP) (or equivalent added No-Fault Coverage) | | Separately stated in each Added PIP Endorsement | | |
| Extraordinary Medical Benefits Coverage (EMB) (PA only) | | Separately stated in the EMB Endorsement | | |
| Optional Basic Economic Loss Coverage (OBEL) (NY only) | | Separately stated in the OBEL Schedule | | |
| Property Protection Insurance (PPI) (MI only) | 05 | Separately stated in the PPI Endorsement | | |
| Medical Expense and Income Loss Benefits (ME/ILB) (VA only) | | Separately stated in the Medical Expense and Income Loss Benefits Endorsement | | |
| Auto Medical Payments (MED) | 02 | $5,000 | | INCL |
| Uninsured Motorists (UM) | 02,10 | See UM/UIM Schedule | | INCL |
| Underinsured Motorists (UIM) (When not included in Uninsured Motorists Coverage) | 02,10 | See UM/UIM Schedule | | INCL |
| Supplementary Uninsured/Underinsured Motorists (SUM) (NY only) | | See state Schedule of Limits for SUM insurance | | |
| Uninsured Motorists (Compulsory Limits $20,000/$40,000) (MA only) | 02,10 | See UM/UIM Schedule | | INCL |

* New York only - Includes Supplemental Spousal Liability (SSL) if CA 04 20 is attached to this policy.

© 2012 Liberty Mutual Insurance. All rights reserved.<br>Includes copyrighted material of Insurance Services Office, Inc.<br>with its permission.

Policy Number AS7-Z91-466370-017

ITEM TWO – Schedule of Coverages and Covered Autos (continued)

| Coverage | Covered Autos | Limit | Premium |
|---|---|---|---|
| Physical Damage Comprehensive Coverage (COMP) | 02,08 | Actual Cash Value or Cost of Repair, whichever is less, minusSee ACS0025 deductible for each covered "auto", but no deductible applies to "loss" caused by fire or lightning. * See ITEM FOUR for Hired or Borrowed "Autos" | $26,134 |
| Physical Damage Specified Causes Of Loss Coverage (SCL) | | Actual Cash Value or Cost of Repair, whichever is less, minus deductible for each covered "auto" for "loss" caused by mischief or vandalism. See ITEM FOUR for Hired or Borrowed "Autos" | |
| Physical Damage Collision Coverage (COLL) | 02,08 | Actual Cash Value or Cost of Repair, whichever is less, minusSee ACS0025 deductible for each covered "auto". See ITEM FOUR for Hired or Borrowed "Autos" | $62,745 |
| Physical Damage Limited Collision Coverage (MA only) | | Actual Cash Value or Cost of Repair, whichever is less, minus deductible for each covered "auto" as stated in ITEM THREE | |
| Physical Damage Towing and Labor | | See ITEM THREE Schedule of Covered "Autos" You Own for the limit for each disablement of a private passenger auto | |

* The wording "but no deductible applies to "loss" caused by fire or lightning" does not apply in New York.

The following information, required by state regulation, is hereby affixed to the Declarations page of your policy.
SEE ENCLOSED EXPLANATION OF COLLISION COVERAGE FOR RENTAL VEHICLES

© 2012 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc.
with its permission.

Policy Number AS7-Z91-466370-017

## BUSINESS AUTO DECLARATIONS EXTENSION SCHEDULE –
## HIRED OR BORROWED AUTOS AND NONOWNED AUTOS

**ITEM FOUR** - Schedule of Hired or Borrowed Covered Auto Coverage and Premiums

| Liability Coverage – Cost of Hire Rating Basis for Autos NOT Used in Your Motor Carrier Operations (Other than Mobile or Farm Equipment) | | | | |
|---|---|---|---|---|
| State | Estimated Annual Cost of Hire | Rate per Each $100 | Factor (if Liability Coverage is Primary) | Premium |
| IN | IF ANY | LIAB 0.495 | | INCL |
| Minimum Premium | | | Total Premium | INCL |

For Liability Coverage for "autos" NOT used in your motor carrier operations, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

| Physical Damage Coverages – Cost of Hire Rating Basis for All Autos (Other than Mobile or Farm Equipment) | | | | | | |
|---|---|---|---|---|---|---|
| Coverage | State | Limit of Insurance | Minimum Premium | Estimated Annual Cost of Hire | Rate per Each $100 Annual Cost of Hire | Premium |
| Comprehensive | IN | Actual Cash Value or Cost of Repair, whichever is less, minus $1,000   deductible for each covered "auto", but no deductible applies to loss caused by fire or lightning" | | IF ANY | 0.344 | INCL |
| Specified Causes of Loss | | Actual Cash Value or Cost of Repair, whichever is less, minus   deductible for each covered "auto" for loss caused by mischief or vandalism | | | | |
| Collision | IN | Actual Cash Value or Cost of Repair, whichever is less, minus $1,000   deductible for each covered "auto" | | IF ANY | 0.671 | INCL |
| | | | | | Total Premium | INCL |

For Physical Damage Coverages, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for any "auto" that is leased, hired, rented or borrowed with a driver.

\* The wording "but no deductible applies to "loss" caused by fire or lightning" does not apply in New York.

ACS 00 03 11 11          © 2011, Liberty Mutual Group of Companies.  All rights reserved.          Page 1 of 2
Includes copyrighted material of Insurance Services Office, Inc.
with its permission.

Policy Number  AS7-Z91-466370-017
ITEM FIVE -- Schedule for Non-Ownership Liability

| Named Insured's Business | Rating Basis | Number | Premium |
|---|---|---|---|
| Other than Garage Service Operations and Other than Social Service Agencies | Number of Employees | 250 | INCL |
| | Number of Partners (Active and Inactive) | | |
| Garage Service Operations | Number of Employees Whose Principal Duty Involves the Operation of Autos | | |
| | Number of Partners (Active and Inactive) | | |
| Social Service Agencies | Number of Employees | | |
| | Number of Volunteers Who Regularly Use Autos to Transport Clients | | |
| | Number of Partners (Active and Inactive) | | |
| Employees as Insureds | Number of Employees | | |
| Volunteers as Insureds | Number of Volunteers | | |
| | | Total Premium | INCL |

ACS 00 03 11 11      © 2011, Liberty Mutual Group of Companies.  All rights reserved.      Page 2 of 2
Includes copyrighted material of Insurance Services Office, Inc.
with its permission.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Policy No: AS7-Z91-466370-017
Effective Date: 10/15/2017
Expiration Date: 10/15/2018
Sales Office: 0969

Issued By: Liberty Insurance Corp.

Policy Number AS7-Z91-466370-017
Issued by        Liberty Insurance Corp.

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### AUTO ENHANCEMENT ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

I.        Newly Acquired or Formed Organizations
II.       Employees as Insureds
III.      Lessor - Additional Insured and Loss Payee
IV.      Supplementary Payments - Increased Limits
V.       Fellow Employee Coverage
VI.      Personal Property of Others
VII.     Additional Transportation Expense and Cost to Recover Stolen Auto
VIII.    Airbag Coverage
IX.      Tapes, Records and Discs Coverage
X.       Physical Damage Deductible - Single Deductible
XI.      Physical Damage Deductible - Glass
XII.     Physical Damage Deductible - Vehicle Tracking System
XIII.    Duties in Event of Accident, Claim, Suit or Loss
XIV.    Unintentional Failure to Disclose Hazards
XV.     Worldwide Liability Coverage - Hired and Nonowned Autos
XVI.    Hired Auto Physical Damage
XVII.   Auto Medical Payments Coverage Increased Limits
XVIII.  Drive Other Car Coverage - Broadened Coverage for Designated Individuals
XIX.    Rental Reimbursement Coverage
XX.     Notice of Cancellation or Nonrenewal
XXI.    Loan/Lease Payoff Coverage
XXII.   Limited Mexico Coverage
XXIII.  Waiver of Subrogation

I.   NEWLY ACQUIRED OR FORMED ORGANIZATIONS

Throughout this policy, the words you and your also refer to any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership of more than 50 percent interest, provided:

A.   There is no similar insurance available to that organization;

B.   Unless you notify us to add coverage to your policy, the coverage under this provision is afforded only until:

1.   The 90th day after you acquire or form the organization; or

2.   The end of the policy period, whichever is earlier; and

C.   The coverage does not apply to an "accident" which occurred before you acquired or formed the organization.

AC 84 07 07 13            © 2013 Liberty Mutual Insurance. All rights reserved.            Page 1 of 11
                        Includes copyrighted material of Insurance Services Office, Inc.,
                                            with its permission.

Policy Number  AS7-Z91-466370-017
Issued by       Liberty Insurance Corp.

II. EMPLOYEES AS INSUREDS

Paragraph A.1. Who Is An Insured of SECTION II - LIABILITY COVERAGE is amended to add:

Your "employee" is an "insured" while using with your permission a covered "auto" you do not own, hire or
borrow in your business or your personal affairs.

III. LESSOR - ADDITIONAL INSURED AND LOSS PAYEE

A. Any "leased auto" will be considered an "auto" you own and not an "auto" you hire or borrow. The
   coverages provided under this section apply to any "leased auto" until the expiration date of this policy or
   until the lessor or his or her agent takes possession of the "leased auto" whichever occurs first.

B. For any "leased auto" that is a covered "auto" under SECTION II- LIABILITY COVERAGE, Paragraph A.1.
   Who Is An Insured provision is changed to include as an "insured" the lessor of the "leased auto". However,
   the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions
   by:

   1. You.

   2. Any of your "employees" or agents; or

   3. Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with
      the permission of any of the above.

C. Loss Payee Clause

   1. We will pay, as interests may appear, you and the lessor of the "leased auto" for "loss" to the covered
      "leased auto".

   2. The insurance covers the interest of the lessor of the "leased auto" unless the "loss" results from
      fraudulent acts or omissions on your part.

   3. If we make any payment to the lessor of a "leased auto", we will obtain his or her rights against any
      other party.

D. Cancellation

   1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common
      Policy Condition.

   2. If you cancel the policy, we will mail notice to the lessor.

   3. Cancellation ends this agreement.

E. The lessor is not liable for payment of your premiums.

F. For purposes of this endorsement, the following definitions apply:

   "Leased auto" means an "auto" which you lease for a period of six months or longer for use in your
   business, including any "temporary substitute" of such "leased auto".

AC 84 07 07 13              © 2013 Liberty Mutual Insurance. All rights reserved.          Page 2 of 11
                    Includes copyrighted material of Insurance Services Office, Inc.,
                                        with its permission.

Policy Number  AS7-Z91-466370-017
Issued by       Liberty Insurance Corp.

"Temporary substitute" means an "auto" that is furnished as a substitute for a covered "auto" when the covered "auto" is out of service because of its breakdown, repair, servicing, "loss" or destruction.

IV.  SUPPLEMENTARY PAYMENTS - INCREASED LIMITS

Subparagraphs A.2.a.(2) and A.2.a.(4) of SECTION II - LIABILITY COVERAGE are deleted and replaced by the following:

(2)  Up to $3,000 for the cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover.  We do not have to furnish these bonds.

(4)  All reasonable expenses incurred by the "insured" at our request, including the actual loss of earnings up to $500 a day because of time off from work.

V.  FELLOW EMPLOYEE COVERAGE

A.  Exclusion B.5. of SECTION II - LIABILITY COVERAGE does not apply.

B.  For the purpose of Fellow Employee Coverage only, Paragraph B.5. of BUSINESS AUTO CONDITIONS is changed as follows:

This Fellow Employee Coverage is excess over any other collectible insurance.

VI.  PERSONAL PROPERTY OF OTHERS

Exclusion 6. in SECTION II - LIABILITY COVERAGE for a covered "auto" is amended to add:

This exclusion does not apply to "property damage" or "covered pollution cost or expense" involving "personal property" of your "employees" or others while such property is carried by the covered "auto". The Limit of Insurance for this coverage is $5,000 per "accident". Payment under this coverage does not increase the Limit of Insurance.

For the purpose of this section of this endorsement, "personal property" is defined as any property that is not used in the individual's trade or business or held for the production or collection of income.

VII.  ADDITIONAL TRANSPORTATION EXPENSE AND COST TO RECOVER STOLEN AUTO

A.  Paragraph A.4.a. of SECTION III - PHYSICAL DAMAGE COVERAGE is amended as follows:

The amount we will pay is increased to $50 per day and to a maximum limit of $1,000.

B.  Paragraph A.4.a. of SECTION III - PHYSICAL DAMAGE COVERAGE is amended to add the following:

If your business is shown in the Declarations as something other than an auto dealership, we will also pay up to $1,000 for reasonable and necessary costs incurred by you to return a stolen covered "auto" from the place where it is recovered to its usual garaging location.

VIII. AIRBAG COVERAGE

Exclusion B.3.a. in SECTION III - PHYSICAL DAMAGE COVERAGE is amended to add:

This exclusion does not apply to the accidental discharge of an airbag.

AC 84 07 07 13          © 2013 Liberty Mutual Insurance. All rights reserved.          Page 3 of 11
                   Includes copyrighted material of Insurance Services Office, Inc.,
                                with its permission.

Policy Number  AS7-Z91-466370-017
Issued by      Liberty Insurance Corp.

IX. TAPES, RECORDS AND DISCS COVERAGE

Exclusion B.4.a. of SECTION III - PHYSICAL DAMAGE COVERAGE is deleted and replaced by the following:

a.  Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment except when the tapes, records, discs or other similar audio, visual or data electronic devices:

    (1) Are your property or that of a family member; and

    (2) Are in a covered "auto" at the time of "loss".

    The most we will pay for "loss" is $200. No Physical Damage Coverage deductible applies to this coverage.

X. PHYSICAL DAMAGE DEDUCTIBLE - SINGLE DEDUCTIBLE

Paragraph D. in SECTION III - PHYSICAL DAMAGE COVERAGE is deleted and replaced by the following:

D.  Deductible

    For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

    When two or more covered "autos" sustain "loss" in the same collision, the total of all the "loss" for all the involved covered "autos" will be reduced by a single deductible, which will be the largest of all the deductibles applying to all such covered "autos".

XI. PHYSICAL DAMAGE DEDUCTIBLE - GLASS

Paragraph D. in SECTION III - PHYSICAL DAMAGE COVERAGE is amended to add:

No deductible applies to "loss" to glass if you elect to patch or repair it rather than replace it.

XII. PHYSICAL DAMAGE DEDUCTIBLE - VEHICLE TRACKING SYSTEM

Paragraph D. in SECTION III - PHYSICAL DAMAGE COVERAGE is amended to add:

Any Comprehensive Coverage Deductible shown in the Declarations will be reduced by 50% for any "loss" caused by theft if the vehicle is equipped with a vehicle tracking device such as a radio tracking device or a global positioning device and that device was the method of recovery of the vehicle.

XIII. DUTIES IN EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS

Subparagraphs A.2.a. and A.2.b. of SECTION IV- BUSINESS AUTO CONDITIONS are changed to:

a.  In the event of "accident", claim, "suit" or "loss", your insurance manager or any other person you designate must notify us as soon as reasonably possible of such "accident", claim, "suit" or "loss".  Such notice must include:

    (1) How, when and where the "accident" or "loss" occurred;

© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Policy Number  AS7-Z91-466370-017
Issued by         Liberty Insurance Corp.

    (2) The "insured's" name and address; and

    (3) To the extent possible, the names and addresses of any injured persons and witnesses.

    Knowledge of an "accident", claim, "suit" or "loss" by your agent, servant or "employee" shall not be considered knowledge by you unless you, your insurance manager or any other person you designate has received notice of the "accident", claim, "suit" or "loss" from your agent, servant or "employee".

b.  Additionally, you and any other involved "insured" must:

    (1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

    (2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

    (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

    (4) Authorize us to obtain medical records or other pertinent information.

    (5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

## XIV. UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS

Paragraph B.2. in SECTION IV - BUSINESS AUTO CONDITIONS is amended to add the following:

Any unintentional failure to disclose all exposures or hazards existing as of the effective date of the Business Auto Coverage Form or at any time during the policy period will not invalidate or adversely affect the coverage for such exposure or hazard. However, you must report the undisclosed exposure or hazard to us as soon as reasonably possible after its discovery

## XV. WORLDWIDE LIABILITY COVERAGE - HIRED AND NONOWNED AUTOS

Condition B.7. in SECTION IV - BUSINESS AUTO CONDITIONS is amended to include the following:

For "accidents" resulting from the use or operation of covered "autos" you do not own, the coverage territory means all parts of the world subject to the following provisions:

a.  If claim is made or "suit" is brought against an "insured" outside of the United States of America, its territories and possessions, Puerto Rico and Canada, we shall have the right, but not the duty to investigate, negotiate, and settle or defend such claim or "suit".

If we do not exercise that right, the "insured" shall have the duty to investigate, negotiate, and settle or defend the claim or "suit" and we will reimburse the "insured" for the expenses reasonably incurred in connection with the investigation, settlement or defense.  Reimbursement will be paid in the currency of the United States of America at the rate of exchange prevailing on the date of reimbursement.

The "insured" shall provide us with such information we shall reasonably request regarding such claim or "suit" and its investigation, negotiation, and settlement or defense.

The "insured" shall not agree to any settlement of the claim or "suit" without our consent.  We shall not unreasonably withhold consent.

 © 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc.,
with its permission.

Policy Number AS7-Z91-466370-017
Issued by      Liberty Insurance Corp.

b. We are not licensed to write insurance outside of the United States of America, its territories or possessions, Puerto Rico and Canada.

We will not furnish certificates of insurance or other evidence of insurance you may need for the purpose of complying with the laws of other countries relating to auto insurance.

Failure to comply with the auto insurance laws of other countries may result in fines or penalties. This insurance does not apply to such fines or penalties.

## XVI. HIRED AUTO PHYSICAL DAMAGE

If no deductibles are shown in the Declarations for Physical Damage Coverage for Hired or Borrowed Autos, the following will apply:

A. We will pay for "loss" under Comprehensive and Collision coverages to a covered "auto" of the private passenger type hired without an operator for use in your business:

1. The most we will pay for coverage afforded by this endorsement is the lesser of:

a. The actual cost to repair or replace such covered "auto" with other property of like kind and quality; or

b. The actual cash value of such covered "auto" at the time of the "loss".

2. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

3. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

B. For each covered "auto", our obligation to pay for, repair, return or replace the covered "auto" will be reduced by any deductible shown in the Declarations that applies to private passenger "autos" that you own. If no applicable deductible is shown in the Declarations, the deductible will be $250.

If the Declarations show other deductibles for Physical Damage Coverages for Hired or Borrowed Autos, this Section XVI of this endorsement does not apply.

C. Paragraph A.4.b. of SECTION III - PHYSICAL DAMAGE COVERAGE is replaced by:

b. Loss of Use Expenses

For Hired Auto Physical Damage provided by this endorsement, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a private passenger vehicle rented or hired without a driver, under a written rental contract or agreement. We will pay for loss of use expenses caused by:

(1) Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

(2) Specified Causes of Loss only if the Declarations indicate that Specified Causes of Loss Coverage is provided for any covered "auto"; or

(3) Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

      © 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc.,
with its permission.

Policy Number AS7-Z91-466370-017
Issued by      Liberty Insurance Corp.

However, the most we will pay under this coverage is $30 per day, subject to a maximum of $900.

XVII. AUTO MEDICAL PAYMENTS COVERAGE - INCREASED LIMITS

For any covered "loss", the Limit of Insurance for Auto Medical Payments will be double the limit shown in the Declarations if the "insured" was wearing a seat belt at the time of the "accident". This is the maximum amount we will pay for all covered medical expenses, regardless of the number of covered "autos", "insureds", premiums paid, claims made, or vehicles involved in the "accident".

If no limit of insurance for Auto Medical Payments is shown on the Declarations, this paragraph Section XVII of this endorsement does not apply.

XVIII. DRIVE OTHER CAR COVERAGE - BROADENED COVERAGE FOR DESIGNATED INDIVIDUALS

A. This endorsement amends only those coverages indicated with an "X" in the Drive Other Car section of the Schedule to this endorsement.

B. SECTION II - LIABILITY COVERAGE is amended as follows:

1. Any "auto" you don't own, hire or borrow is a covered "auto" for Liability Coverage while being used by any individual named in the Drive Other Car section of the Schedule to this endorsement or by his or her spouse while a resident of the same household except:

   a. Any "auto" owned by that individual or by any member of his or her household; or

   b. Any "auto" used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking "autos".

2. The following is added to Who Is An Insured:

   Any individual named in the Drive Other Car section of the Schedule to this endorsement and his or her spouse, while a resident of the same household, are "insureds" while using any covered "auto" described in Paragraph B.1. of this endorsement.

C. Auto Medical Payments, Uninsured Motorist, and Underinsured Motorist Coverages are amended as follows:

   The following is added to Who Is An Insured:

   Any individual named in the Drive Other Car section of the Schedule to this endorsement and his or her "family members" are "insured" while "occupying" or while a pedestrian when struck by any "auto" you don't own except:

   Any "auto" owned by that individual or by any "family member".

D. SECTION III - PHYSICAL DAMAGE COVERAGE is changed as follows:

   Any private passenger type "auto" you don't own, hire or borrow is a covered "auto" while in the care, custody or control of any individual named in the Drive Other Car section of the Schedule to this endorsement or his or her spouse while a resident of the same household except:

   1. Any "auto" owned by that individual or by any member of his or her household; or

AC 84 07 07 13          © 2013 Liberty Mutual Insurance. All rights reserved.          Page 7 of 11
                 Includes copyrighted material of Insurance Services Office, Inc.,
                              with its permission.

Policy Number  AS7-Z91-466370-017
Issued by  Liberty Insurance Corp.

    2.  Any "auto" used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking "autos".

  E.  For purposes of this endorsement, SECTION V - DEFINITIONS is amended to add the following:

    "Family member" means a person related to the individual named in the Drive Other Car section of the Schedule to this endorsement by blood, marriage or adoption who is a resident of the individual's household, including a ward or foster child.

## XIX. RENTAL REIMBURSEMENT COVERAGE

  A.  For any owned covered "auto" for which Collision and Comprehensive Coverages are provided, we will pay for rental reimbursement expenses incurred by you for the rental of an "auto" because of a covered physical damage "loss" to an owned covered "auto". Such payment applies in addition to the otherwise applicable amount of physical damage coverage you have on a covered "auto". No deductibles apply to this coverage.

  B.  We will pay only for those expenses incurred during the policy period beginning 24 hours after the "loss" and ending with the earlier of the return or repair of the covered "auto", or the exhaustion of the coverage limit.

  C.  Our payment is limited to the lesser of the following amounts:

    1.  Necessary and actual expenses incurred; or

    2.  $30 per day with a maximum of $900 in any one period.

  D.  This coverage does not apply:

    1.  While there are spare or reserve "autos" available to you for your operations; or

    2.  If coverage is provided by another endorsement attached to this policy.

  E.  If a covered "loss" results from the total theft of a covered "auto" of the private passenger type, we will pay under this coverage only that amount of your rental reimbursement expenses which is not already provided for under Paragraph A.4. Coverage Extensions of SECTION III – PHYSICAL DAMAGE COVERAGE of the Business Auto Coverage Form or Section VII of this endorsement.

## XX. NOTICE OF CANCELLATION OR NONRENEWAL

  A.  Paragraph A.2. of the COMMON POLICY CONDITIONS is changed to:

    2.  We may cancel or non-renew this policy by mailing written notice of cancellation or non-renewal to the Named Insured, and to any name(s) and address(es) shown in the Cancellation and Non-renewal Schedule:

      a.  For reasons of non-payment, the greater of:

        (1)  10 days; or

        (2)  The number of days specified in any other Cancellation Condition attached to this policy; or

      b.  For reasons other than non-payment, the greater of:

 © 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc.,
with its permission.

Policy Number AS7-Z91-466370-017
Issued by        Liberty Insurance Corp.

      (1) 60 days;

      (2) The number of days shown in the Cancellation and Non-renewal Schedule; or

      (3) The number of days specified in any other Cancellation Condition attached to this policy,

    prior to the effective date of the cancellation or non-renewal.

B. All other terms of Paragraph A. of the COMMON POLICY CONDITIONS, and any amendments thereto, remain in full force and effect.

## XXI. LOAN/LEASE PAYOFF COVERAGE

The following is added to Paragraph C. Limit of Insurance of SECTION III - PHYSICAL DAMAGE COVERAGE:

In the event of a total "loss" to a covered "auto" of the private passenger type shown in the schedule or declarations for which Collision and Comprehensive Coverage apply, we will pay any unpaid amount due on the lease or loan for that covered "auto", less:

1. The amount paid under the PHYSICAL DAMAGE COVERAGE SECTION of the policy; and

2. Any:

    a. Overdue lease/loan payments at the time of the "loss";

    b. Financial penalties imposed under a lease for excessive use, abnormal wear and tear or high mileage;

    c. Security deposits not returned by the lessor;

    d. Costs for extended warranties, Credit Life Insurance, Health, Accident or Disability Insurance purchased with the loan or lease; and

    e. Carry-over balances from previous loans or leases.

This coverage is limited to a maximum of $1500 for each covered "auto".

## XXII. LIMITED MEXICO COVERAGE

---

**WARNING**
AUTO ACCIDENTS IN MEXICO ARE SUBJECT TO THE LAWS OF MEXICO ONLY – **NOT** THE LAWS OF THE UNITED STATES OF AMERICA.  THE REPUBLIC OF MEXICO CONSIDERS ANY AUTO ACCIDENT A **CRIMINAL OFFENSE** AS WELL AS A CIVIL MATTER.

IN SOME CASES THE COVERAGE PROVIDED UNDER **THIS ENDORSEMENT MAY NOT BE RECOGNIZED** BY THE **MEXICAN AUTHORITIES** AND WE MAY NOT BE ALLOWED TO IMPLEMENT THIS COVERAGE AT ALL IN MEXICO. YOU SHOULD CONSIDER PURCHASING AUTO COVERAGE FROM A LICENSED MEXICAN INSURANCE COMPANY BEFORE DRIVING INTO MEXICO.

THIS ENDORSEMENT DOES NOT APPLY TO ACCIDENTS OR LOSSES WHICH OCCUR BEYOND 25 MILES FROM THE BOUNDARY OF THE UNITED STATES OF AMERICA.

---

 © 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc.,
with its permission.

Policy Number  AS7-Z91-466370-017
Issued by       Liberty Insurance Corp.

A.  Coverage

1.  Paragraph B.7. of  SECTION IV – BUSINESS AUTO CONDITIONS is amended by the addition of the following:

The coverage territory is extended to include Mexico but only if all of the following criteria are met:

a.  The "accidents" or "loss" occurs within 25 miles of the United States border; and

b.  While on a trip into Mexico for 10 days or less.

2.  For coverage provided by this section of the endorsement, Paragraph B.5. Other Insurance in SECTION IV - BUSINESS AUTO CONDITIONS is replaced by the following:

The insurance provided by this endorsement will be excess over any other collectible insurance.

B.  Physical Damage Coverage is amended by the addition of the following:

If a "loss" to a covered "auto" occurs in Mexico, we will pay for such "loss" in the United States. If the covered "auto" must be repaired in Mexico in order to be driven, we will not pay more than the actual cash value of such "loss" at the nearest United States point where the repairs can be made.

C.  Additional Exclusions

The following additional exclusions are added:

This insurance does not apply:

1.  If the covered "auto" is not principally garaged and principally used in the United States.

2.  To any "insured" who is not a resident of the United States.

XXIII. WAIVER OF SUBROGATION

Paragraph A.5. in SECTION IV - BUSINESS AUTO CONDITIONS does not apply to any person or organization where the Named Insured has agreed, by written contract executed prior to the date of "accident", to waive rights of recovery against such person or organization.

© 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc.,
with its permission.

Policy Number AS7-Z91-466370-017
Issued by       Liberty Insurance Corp,

**Schedule**

**Premium**

Liability   Included
Physical Damage    Included
Total Premium    Included

**V.   Fellow Employee**
**Schedule of Employees:**

Not Applicable

| **XVIII. Drive Other Car** | LIAB | MP | UM | UIM | COMP | COLL |
|---|---|---|---|---|---|---|
| **Name of Individual** | | | | | | |
| Not Applicable | | | | | | |

**XX. Notice of Cancellation or Nonrenewal**
**Name and Address**

**Number of Days**

30

This endorsement applies in all states except:
FL, HI, KS, NY, VA

    © 2013 Liberty Mutual Insurance. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc.,
with its permission.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LESSOR - ADDITIONAL INSURED AND LOSS PAYEE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## SCHEDULE

| | |
|---|---|
| **Insurance Company:** | |
| **Policy Number:**  AS7-Z91-466370-017 | **Effective Date:** |
| **Expiration Date:** | |
| **Named Insured:** | |
| **Address:** | |
| **Additional Insured (Lessor):** | **SEE ATTACHED SCHEDULE** |
| **Address:** | |
| **Designation Or Description Of "Leased Autos":** | **SEE ATTACHED SCHEDULE** |

| Coverages | Limit Of Insurance |
|---|---|
| **Liability** | $                    Each "Accident" |
| **Comprehensive** | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus <br> $                    Deductible For Each Covered "Leased Auto" |
| **Collision** | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus <br> $                    Deductible For Each Covered "Leased Auto" |
| **Specified Causes Of Loss** | Actual Cash Value Or Cost Of Repair Whichever Is Less, Minus <br> $                    Deductible For Each Covered "Leased Auto" |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

CA 20 01 03 06                    Copyright, ISO Properties, Inc., 2005                    Page 1 of 2

## A. Coverage

1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.

2. For a "leased auto" designated or described in the Schedule, **Who Is An Insured** is changed to include as an "insured" the lessor named in the Schedule. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

   a. You;

   b. Any of your "employees" or agents; or

   c. Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

3. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

## B. Loss Payable Clause

1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

## C. Cancellation

1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

2. If you cancel the policy, we will mail notice to the lessor.

3. Cancellation ends this agreement.

## D. The lessor is not liable for payment of your premiums.

## E. Additional Definition

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

Policy No: AS7-Z91-466370-017
Effective Date: 10/15/2017
Expiration Date: 10/15/2018
Sales Office: 0969

Issued By: Liberty Insurance Corp.

 Copyright, ISO Properties, Inc., 2005

POLICY NUMBER: AS7-Z91-466370-017

COMMERCIAL AUTO
CA 20 01 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LESSOR - ADDITIONAL INSURED AND LOSS PAYEE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## SCHEDULE

| Insurance Company: | |
|---|---|
| Policy Number: | Effective Date: |
| Expiration Date: | |
| Named Insured: | |
| Address: | |
| Additional Insured (Lessor): | SEE ATTACHED SCHEDULE |
| Address: | |
| Designation Or Description Of "Leased Autos": | SEE ATTACHED SCHEDULE |

© Insurance Services Office, Inc., 2011

| Coverages | Limit Of Insurance | | |
|---|---|---|---|
| Covered Autos Liability | $ | | Each "Accident" |
| Comprehensive | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus | | |
| | $ | | Deductible For Each Covered "Leased Auto" |
| Collision | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus | | |
| | $ | | Deductible For Each Covered "Leased Auto" |
| Specified Causes Of Loss | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus | | |
| | $ | | Deductible For Each Covered "Leased Auto" |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

## A. Coverage

1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.

2. For a "leased auto" designated or described in the Schedule, the **Who Is An Insured** provision under **Covered Autos Liability Coverage** is changed to include as an "insured" the lessor named in the Schedule. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

   a. You;

   b. Any of your "employees" or agents; or

   c. Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

3. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

## B. Loss Payable Clause

1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

## C. Cancellation

1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

2. If you cancel the policy, we will mail notice to the lessor.

3. Cancellation ends this agreement.

## D. The lessor is not liable for payment of your premiums.

## E. Additional Definition

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

 © Insurance Services Office, Inc., 2011     CA 20 01 10 13

Policy Number AS7-Z91-466370-017
Issued By: Liberty Insurance Corp.

## SCHEDULE OF ADDITIONAL INSURED - LESSOR(S)

The lessor is an additional insured according to the endorsement which applies in the state of leased vehicles garaging.

Addtional Insured - Lessor(s)

Ryder Truck Rental, Inc. & Ryder Truck Rental LT & their affiliates
6000 Windward Parkway
Alpharetta, GA 30005
Re: As per requirement per written contract or agreement

Personal Attention Leasing Inc
2102 W Epler Ave
Indianapolis, IN 46217
Re: As per requirement per written contract or agreement

Avis Budget Group Inc & Its Subsidiaries
4500 S 129th Ave, Ste 100
PO Box 690360
Tulsa, OK 74169-0360
Re: As per requirement per written contract or agreement

Enterprise Rent-A-Truck
4112 Getwell Road
Memphis, TN 38118
Re: As per requirement per written contract or agreement

Enterprise Rent-A-Car Company of PGM DBA Enterprise Rent-A-Truck
4489 Cambells Run Road
Pittsburgh, PA 15205-1311
Re: As per requirement per written contract or agreement

Ryder Truck Services
39550 13 Mile Road
Novi, MI 48377
Re: As per requirement per written contract or agreement

Ryder Truck Rental Inc
220 Tatley St.
Springfield, MA 01104
Re: As per requirement per written contract or agreement

Ryder Integrated Logistics
39550 13 Mile RD., Ste 103
Novi, MI 48377
Re: As per requirement per written contract or agreement

Ryder Truck Rental Inc
3500 Beltline Road
Farmers Branch, TX 75234
Re: As per requirement per written contract or agreement

Ryder Truck Rental
4712 South Freeway
Fort Worth, TX 76115
Re: As per requirement per written contract or agreement

**ACS 00 11 11 11 A**                                                      Page 1 of 1

Policy Number AS7-Z91-466370-017
Issued By: Liberty Insurance Corp.

## SCHEDULE OF ADDITIONAL INSURED - LESSOR(S)

The lessor is an additional insured according to the endorsement which applies in the state of leased vehicles garaging.

Addtional Insured - Lessor(s)

Ryder Truck Rental Inc
12001 BallFord Road
Manassas, VA 20109
Re: As per requirement per written contract or agreement

Ryder Truck Rental Inc
5300 W 39th St
Chicago, IL 60606
Re: As per requirement per written contract or agreement

Ryder Truck Rental Inc
4705 Agnes St
Corpus Christi, TX 78405
Re: As per requirement per written contract or agreement

Ryder Truck Leasing Co., LP & Penske Leasing and Rental Co.
62 S Linden Ave
South San Francisco, CA 94080
Re: As per requirement per written contract or agreement

Ryder Truck Rental Inc
2313 Milwaukee Way
Tacome, WA 98421
Re: As per requirement per written contract or agreement

Ryder Truck Rental Inc
6600 Buttin Gwinnett Drive
Doraville, GA 30340
Re: As per requirement per written contract or agreement

Ryder Truck Rental Inc
PO Box 020816
Miami, FL 33102-0816
Re: As per requirement per written contract or agreement

Ryder truck Rental Inc
PO Box 55245
Houston, TX 77255-5245
Re: As per requirement per written contract or agreement

Ryder Truck Rental Inc
5951 Middlebrooke Pike
Knoxville, TN 37909
Re: As per requirement per written contract or agreement

Ryder Truck Rental Inc
903 Route 83
Bensenville IL 60106-1221
Re: As per requirement per written contract or agreement

ACS 00 11 11 11 A                                    Page 1 of 1

Policy Number AS7-Z91-466370-017
Issued By: Liberty Insurance Corp.

## SCHEDULE OF ADDITIONAL INSURED - LESSOR(S)

The lessor is an additional insured according to the endorsement which applies in the state of leased vehicles garaging.

Additional Insured - Lessor(s)

Worldwide Equipment Leasing Inc
6416 Asheville Highway
Knoxville, TN 37918
Re: As per requirement per written contract or agreement

Milestone Trailer Leasing
3737 Stewarts Ln
Nashville, TN 37218
Re: As per requirement per written contract or agreement

ACS 00 11 11 11 A                                                  Page 1 of 1

POLICY NUMBER: AS7-Z91-466370-017

COMMERCIAL AUTO
CA 20 48 10 13

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DESIGNATED INSURED FOR COVERED AUTOS LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement identifies person(s) or organization(s) who are "insureds" for Covered Autos Liability Coverage under the Who Is An Insured provision of the Coverage Form. This endorsement does not alter coverage provided in the Coverage Form.

## SCHEDULE

| Name Of Person(s) Or Organization(s): |
|---|
| Refer to Designated Insured Schedule |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

Each person or organization shown in the Schedule is an "insured" for Covered Autos Liability Coverage, but only to the extent that person or organization qualifies as an "insured" under the Who Is An Insured provision contained in Paragraph A.1. of Section II - Covered Autos Liability Coverage in the Business Auto and Motor Carrier Coverage Forms and Paragraph D.2. of Section I - Covered Autos Coverages of the Auto Dealers Coverage Form.

Policy Number AS7-Z91-466370-017

## DESIGNATED INSURED SCHEDULE

Applicable to: CA 20 48 02 99, CA 20 48 10 13, MM 99 50 04 11, MM 99 50 10 13

Name of Person(s) or Organization(s)

Any person or organization where the named insured has agreed by written contract to include such person or organization as a designated insured

ACS 20 05 10 13 B                    © 2013 Liberty Mutual Insurance. All rights reserved.                    Page 1   of 1

COMMERCIAL AUTO
CA 00 01 10 13

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**SECTION I – COVERED AUTOS**

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

© Insurance Services Office, Inc., 2011

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols 1, 2, 3, 4, 5, 6 or 19 are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol 7 is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

**SECTION II - COVERED AUTOS LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

   The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      (1) The owner or anyone else from whom you hire or borrow a covered "auto".

      This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

© Insurance Services Office, Inc., 2011

CA 00 01 10 13

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

(5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

2. **Coverage Extensions**

a. **Supplementary Payments**

We will pay for the "insured":

(1) All expenses we incur.

(2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

(5) All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

b. **Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed, we will:

(1) Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

B. **Exclusions**

This insurance does not apply to any of the following:

1. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

2. **Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b. That the "insured" would have in the absence of the contract or agreement.

3. **Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

© Insurance Services Office, Inc., 2011

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the "insured's" business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to:

a. Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

b. The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph a.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

a. Any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment"; or

b. Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph a. or b. above.

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed;

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

© Insurance Services Office, Inc., 2011 CA 00 01 10 13

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

   (1) Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

   (2) Otherwise in the course of transit by or on behalf of the "insured"; or

   (3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts if:

   (1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   (2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

   (a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

   (b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

© Insurance Services Office, Inc., 2011

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III - PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   a. **Comprehensive Coverage**

   From any cause except:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

   b. **Specified Causes Of Loss Coverage**

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

   (5) Mischief or vandalism; or

   (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   c. **Collision Coverage**

   Caused by:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting A Bird Or Animal - Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   a. **Transportation Expenses**

   We will pay up to $20 per day, to a maximum of $600, for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

   b. **Loss Of Use Expenses**

   For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

   (1) Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

   (2) Specified Causes Of Loss only if the Declarations indicates that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

© Insurance Services Office, Inc., 2011

CA 00 01 10 13

(3) Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

## B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   a. **Nuclear Hazard**

      (1) The explosion of any weapon employing atomic fission or fusion; or

      (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

   b. **War Or Military Action**

      (1) War, including undeclared or civil war;

      (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

      (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" due and confined to:

   a. Wear and tear, freezing, mechanical or electrical breakdown.

   b. Blowouts, punctures or other road damage to tires.

   This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

4. We will not pay for "loss" to any of the following:

   a. Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   b. Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

   c. Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

   d. Any accessories used with the electronic equipment described in Paragraph c. above.

5. Exclusions 4.c. and 4.d. do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

   a. Permanently installed in or upon the covered "auto";

   b. Removable from a housing unit which is permanently installed in or upon the covered "auto";

   c. An integral part of the same unit housing any electronic equipment described in Paragraphs a. and b. above; or

   d. Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

6. We will not pay for "loss" to a covered "auto" due to "diminution in value".

## C. Limits Of Insurance

1. The most we will pay for:

   a. "Loss" to any one covered "auto" is the lesser of:

      (1) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

      (2) The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

   b. All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

      (1) Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

© Insurance Services Office, Inc., 2011

(2) Removable from a permanently installed housing unit as described in Paragraph b.(1) above; or

(3) An integral part of such equipment as described in Paragraphs b.(1) and b.(2) above.

2. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

3. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

### D. Deductible

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

## SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

### A. Loss Conditions

1. **Appraisal For Physical Damage Loss**

   If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

   If we submit to an appraisal, we will still retain our right to deny the claim.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss**

   We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

   a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

      (1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

b. Additionally, you and any other involved "insured" must:

   (1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

   (2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

   (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

   (4) Authorize us to obtain medical records or other pertinent information.

   (5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

c. If there is "loss" to a covered "auto" or its equipment, you must also do the following:

   (1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

   (2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

   (3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

   (4) Agree to examinations under oath at our request and give us a signed statement of your answers.

3. **Legal Action Against Us**

   No one may bring a legal action against us under this Coverage Form until:

   a. There has been full compliance with all the terms of this Coverage Form; and

   b. Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

© Insurance Services Office, Inc., 2011   CA 00 01 10 13

**4. Loss Payment – Physical Damage Coverages**

At our option, we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form provides for the "trailer" is:

(1) Excess while it is connected to a motor vehicle you do not own; or

(2) Primary while it is connected to a covered "auto" you own.

b. For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

c. Regardless of the provisions of Paragraph a. above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

© Insurance Services Office, Inc., 2011

7. **Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

(1) The United States of America;

(2) The territories and possessions of the United States of America;

(3) Puerto Rico;

(4) Canada; and

(5) Anywhere in the world if a covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada, or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

8. **Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V - DEFINITIONS

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means:

1. A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

 © Insurance Services Office, Inc., 2011   CA 00 01 10 13

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph 6.b. or 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

E. "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

F. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

G. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

H. "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

I. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

J. "Loss" means direct and accidental loss or damage.

K. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

© Insurance Services Office, Inc., 2011

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. Power cranes, shovels, loaders, diggers or drills; or

   b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in Paragraph 1., 2., 3. or 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers; or

6. Vehicles not described in Paragraph 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   a. Equipment designed primarily for:

      (1) Snow removal;

      (2) Road maintenance, but not construction or resurfacing; or

      (3) Street cleaning;

   b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

L. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M. "Property damage" means damage to or loss of use of tangible property.

N. "Suit" means a civil proceeding in which:

   1. Damages because of "bodily injury" or "property damage"; or

   2. A "covered pollution cost or expense";

   to which this insurance applies, are alleged.

   "Suit" includes:

      a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

      b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

O. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

P. "Trailer" includes semitrailer.

 © Insurance Services Office, Inc., 2011 CA 00 01 10 13

# EXHIBIT E

Ryder                     10/11/2017 9:13:13 AM  PAGE   2/004   Fax Server

ACCOUNT NUMBER: 060005
CUSTOMER NAME: JACK HOOD TRANSPORTATION, INC
DOCUMENT TYPE: 770

ACCOUNT NUMBER: 010760
CUSTOMER NAME: JACK HOOD TRANSPORTATION
DOCUMENT TYPE: 870

Ryder                    10/11/2017 9:13:13 AM   PAGE   3/004   Fax Server

ACORD™

# CERTIFICATE OF LIABILITY INSURANCE

JACKHM

DATE (MM/DD/YYYY)
10/10/2017

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Ron Zimmer |
|---|---|
| ... Insurance | PHONE: 219-462-5175   FAX: 219-464-2083 |
| 970 Vale Park Rd, Suite A | EMAIL: |
| Valparaiso, IN 46383 | |
| Ron Zimmer | INSURER(S) AFFORDING COVERAGE   NAIC # |
| | INSURER A: Liberty Insurance Corp |
| INSURED  Jack Road Transportation, Inc | INSURER B: Ohio Casualty Insurance Co   24074 |
| 4037 W 700 N | INSURER C: |
| Michigan City, IN 46360 | INSURER D: |
| | INSURER E: |
| | INSURER F: |

## COVERAGES   CERTIFICATE NUMBER:   REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| A | AUTOMOBILE LIABILITY | X | | AS7-Z91-468570-017 | 10/15/2017 | 10/15/2018 | COMBINED SINGLE LIMIT (Ea accident) | $ 2,000,000 |
| | X  ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | OWNED / SCHEDULED AUTOS ONLY / AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X HIRED AUTOS ONLY / X NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DED ☐ RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY   Y / N | | N/A | | | | PER STATUTE ☐ OTH-ER ☐ | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| B | Cargo | | | BMO57932213 | 10/15/2017 | 10/15/2018 | Per Veh | 75,000 |
| | Ded $1000 | | | | | | Cat-Occ | 200,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Insurance of Magnum Distribution ... Ryder Truck Rental Inc is a 50/50 Additional Insured (CA2048) & Loss Payee as per written contract or all vehicles leased, rented or supplied as a substitute to the named insured.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| RYDER-1 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Ryder Truck Rental, Inc. & Ryder Truck Rental LT & their Affiliates | |
| 6000 Windward Pkwy. | AUTHORIZED REPRESENTATIVE |
| Alpharetta, GA 30005 | Ron Zimmer |

ACORD 25 (2016/03)     © 1988-2015 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

General Page 4

Ryder                         10/11/2017 9:13:13 AM   PAGE   4/004   Fax Server

**NOTEPAD:**

| HOLDER NAME | RYDER-1 | JACKH-1 | PAGE 2 |
| INSURED NAME | Jack Hood Transportation, Inc. | OP ID: SQ | DATE 10/11/2017 |

Effective Management refer comp & coll date $5000 - Owner Units comp & coll
date $1,000***Hired & Non-Owned comp & coll ded $1000***Auto liability
ded $2,500